Rhoda GATES, Administratrix of the estate of George Tashkoff, deceased, Pete Tashkoff, Toni Hagelin, Helyn Bellavance, Thomas Tashkoff and Rhoda Gates, Respondents,

v.

Aline ROBERTS, Appellant.

No. 48509.

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

William R. Ross, Gene R. Martin, Ennis, Browne & Martin, Kansas City, for appellant.

John C. Pohlmann, William H. Costello, Kansas City, for respondents.

HOUSER, Commissioner.

Suit to quiet title to Lot 18, Doherty's Addition, Kansas City. Plaintiffs claimed title by inheritance from their father, George Tashkoff, deceased, and that George Tashkoff obtained title by tax deed and adverse possession. Defendant, denying plaintiffs' title, claimed title by virtue of a warranty deed from the record owner.

The case was tried to the court without a jury. The trial court found the issues for plaintiffs, sustained their plea of adverse possession, and declared defendant's warranty deed a nullity. Defendant has appealed, and now seeks a reversal of the judgment on the ground that the court erred in decreeing title in plaintiffs because (1) the tax deeds purchased by plaintiffs' father were void, and (2) there was no evidence that the possession of plaintiffs' father was exclusive or hostile.

■ A jury having been waived, we review the case upon both the law and the evidence as in suits of an equitable nature, not setting aside the judgment unless clearly erroneous, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, Supreme Court Rule 73.01(d), V.A.M.R.; Section 510.310, subd. 4, RSMo 1959, V.A.M.S.; Ennis v. Korb, Mo.Sup., 347 S.W.2d 671, reversing or affirming the trial court or giving such judgment as seems agreeable to law. Supreme Court Rule 83.13(c), V.A.M.R.; Carlisle v. Keeling, Mo.Sup., 347 S.W.2d 191.

We find these to be the facts: In 1922 John H. Doherty, his wife Irene, and his mother Sarah, the joint owners of a tract of land in Kansas City, subdivided the land. The subdivision included Lot 18, the subject of the present controversy. John Doherty died in 1928, and Sarah died thereafter, thus leaving Irene Doherty as the sole surviving record owner. Sometime prior to 1937 one L. V. Churchman commenced the construction of a house on Lot 18. Nothing in the record indicates that Churchman had any interest in the land or what, if any, contractual arrangements he may have had with Irene Doherty for the construction of the building. After putting in the founda-

tion and erecting the walls, subfloor and roof Churchman abandoned the project and disappeared. The house remained vacant, in this unfinished condition, without partitions, doors, windows, finished floor, utilities or even entrance steps, for a year or two. It was referred to in the community as "the empty shack," and was reputed to be "a haunted house." It was just a "shell of a house" on a 25-foot lot. At that time the house and lot were worth somewhere between $300 and $1,000. On September 11, 1937 George Tashkoff was about to lose his home on nearby Hughes Street for inability to meet the payments. Tashkoff's family consisted of himself, his wife and four children. When Tashkoff saw the house on Lot 18, a place he had "found for his family to go," he said it was "an answer to a prayer"—a "miracle," and he and his family moved in. No one in the family seemed to know who the owner was; no arrangements were made with Irene Doherty, the record owner; the family "just moved in." Tashkoff "put himself into possession." On September 11, 1937 Irene Doherty lived nearby, within sight of and not more than 150 or 200 feet distant from, Lot 18. Irene Doherty was "tax poor." She "owed a lot of taxes" during the depression and was losing other properties on account of tax delinquencies. Finally she was forced by circumstances to let the taxes become delinquent on Lot 18. After moving in, Tashkoff cleared the property of underbrush, cut the grass and planted fruit trees. He was an industrious, hard-working man. Slowly, by degrees, and as he could afford it, Tashkoff installed flooring, ceilings, partitions, windows, doors, electricity, water, plumbing fixtures, and built two large additional rooms and a bathroom. Tashkoff and his family devoted all available funds to the repair and additions to the house. Within a year "they were fairly comfortable." In 1938 Tashkoff went to the City Hall and secured from the City Treasurer a tax deed to Lot 18 for unpaid city taxes for the year 1932. The consideration was $8.48. On November 19, 1939 Tashkoff caused the issuance of a second such tax deed to Lot 18 for unpaid city taxes for the year 1934. The consideration was $8.63. In 1938, 1939 and 1940 Tashkoff paid the delinquent city, county, school district and state taxes on Lot 18, some of which ran back to 1934. Thereafter and until the date of his death Tashkoff kept the taxes paid. The tax bills were made out to George Tashkoff or to "John H. Doherty % Geo. Tashkoff." George Tashkoff died on November 9, 1958. Thereafter one of the plaintiffs paid the taxes. George Tashkoff and his family, and no one else, occupied and controlled the premises from September 11, 1937 to November 9, 1958. A daughter testified, "It was always our property; our house." After 1938 Irene Doherty always referred to the property as "the Tashkoff property." Irene Doherty continued to live in view of "the Tashkoff property" through the years, with full knowledge that Tashkoff was there and what he was doing with the property. Tashkoff claimed title to the property from the time he moved in. He stayed there, possessing and occupying the property, making it his home continuously for more than 20 years, raising his family there, making all the repairs and paying the taxes on the property. He continued to claim title and to claim the property "as his own" until he died. On July 13, 1959 Irene Doherty made a warranty deed to Lot 18 to the defendant Aline Roberts. Irene Doherty died in September, 1959. After her death this suit was instituted.

With respect to appellant's contention that the tax deeds were void, suffice it to say that the trial court did not base its judgment and respondents do not rest their claim, upon the tax deeds. Respondents say the tax deeds are immaterial, and that even if they are void, they were "sufficient color of title to support an action of adverse possession."

Appellant claims that respondents' evidence fails to establish the necessary element of "hostile" possession; that there is no evidence that Tashkoff entered the property

under any claim of right; that he did not enter under color of title; and that the circumstances under which he entered are more consistent with a permissive possession than an adverse possession. She argues that a possession permissive in its inception continues to be permissive in character until transformed into an adverse possession by a distinct and positive assertion of a right hostile to the owner and brought to the knowledge of the owner; that there was no positive assertion of this kind "brought home to Irene Doherty" during Tashkoff's occupancy, and that it was not until after Tashkoff's death that Irene Doherty "had any knowledge of an adverse claim inconsistent with the permissive character of the possession granted to George Tashkoff."

■■ Was the possession *exclusive* and *hostile*? "Exclusive possession" means that the claimant must hold the possession of the land for himself, as his own, and not for another. 2 C.J.S. Adverse Possession § 47, p. 566; 1 Am.Jur. Adverse Possession § 141. "Hostile possession" means possession opposed and antagonistic to the claims of all others, Bradbury Marble Co. v. Laclede Gas Light Co., 128 Mo.App. 96, 106 S.W. 594, 599; adverse, Weller v. Wagner, 181 Mo. 151, 79 S.W. 941, 943; and imports the occupation of land by the possessor with the intent to possess the land as his own. Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544; Agers v. Reynolds, Mo.Sup., 306 S.W.2d 506, 511.

■ All of the evidence, without contradiction, shows that Tashkoff entered the possession of the property, claiming it as his own, holding the possession for himself as owner, and not for another, appropriating the land to his own use and benefit, exercising exclusive dominion over it, performing acts of ownership such as the making of extensive improvements, all of which were consistent with an intention to occupy as the owner and inconsistent with any theory of permissive use. Although defendant's counsel cross-examined plaintiffs' witnesses vigorously in an attempt to elicit some indication that the entry of Tashkoff into the possession was permissive in character, there was not the slightest intimation that this was the fact, and defendant introduced no evidence in support of her theory of permissive use. It is unrealistic to contend that Irene Doherty had no knowledge of any adverse claim to her property. This is not a "gradual, unrebuffed intrusion upon the premises and rights of the record owner," as in Carlisle v. Keeling, supra. Here, George Tashkoff and his family descended upon the property, moved in right under the nose of the record owner, cleaned up the place, completed the construction of the building and made substantial additions thereto, planted an orchard and lived in actual, open and notorious, continuous, and exclusive possession of the property, under claim of right, as against the whole world including the record owner, who lived only a stone's throw from Lot 18, for a period of more than 20 years. While it is true that Tashkoff did not enter under color of title it is the general rule, in the absence of statutory requirement, that color of title is not a necessary element in order to originate and perfect title by adverse possession. Cullen v. Johnson, 325 Mo. 253, 29 S.W.2d 39, 47. The adverse possession in this case, commenced without color of title, was later fortified by color of title, and possession under color of title continued for many years more than the period necessary to perfect title by adverse possession.

■ The record is amply sufficient to sustain the trial court's finding in favor of the plaintiffs, and the judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.