**WHETSTONE BAPTIST CHURCH,**
**Plaintiff–Respondent,**

v.

**Donald SCHILLING and Jennifer**
**Schilling, Defendants–**
**Appellants,**

and

**Mountain Grove Rentals, Inc.,**
**a Missouri Corporation,**
**Defendants.**

No. SD 31412.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2012.

Application for Transfer Denied
Oct. 30, 2012.

Paul F. Sherman, Springfield, MO, for Appellant.

Raymond M. Gross, Gainesville, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Donald Schilling and Jennifer Schilling ("Defendants"), husband and wife, appeal a judgment quieting title in favor of Whetstone Baptist Church ("Plaintiff") to a strip of land ("the disputed land" or "the old roadway") that Plaintiff's predecessor in title had allegedly acquired by adverse possession. In a single point relied on, Defendants claim that: 1) a necessary ele-

ment of adverse possession—that the possession at issue was "hostile, under claim of right, and adverse to the true owner"—was not supported by substantial evidence; and 2) Plaintiff's predecessor implicitly admitted that "paramount title" to the disputed land belonged to "someone else" when he and his estate executed certain deeds that did not include the disputed property. Finding no merit in either claim, we affirm.

### Applicable Principles of Review & Governing Law

When reviewing a court-tried case, we must sustain the decree or judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court may decide whether to believe all, some, or none of any witness's testimony. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). If the trial court does not make findings on specific factual issues, then all facts are "considered as having been found in accordance with the result reached." Rule 73.01(c)[1]; *see also Ratteree v. Will*, 258 S.W.3d 864, 872 (Mo.App. E.D.2008). "When determining the sufficiency of the evidence an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence." *T.B.G.*, 772 S.W.2d at 654. Our following summary of the relevant evidence is presented in accordance with these governing principles.

1. All rule references are to Missouri Court Rules (2012).

2. During Mrs. Franklin's deposition, which was admitted into evidence as Plaintiff's Ex-

### Facts and Procedural Background

The parties are the present owners of parcels of land in Mountain Grove that abut the old roadway. Plaintiff's land is east of Defendants' land, and both parcels are bounded on the north by "new" U.S. Highway 60 and on the south by "old" U.S. Highway 60. Defendant's Exhibit A, a survey Plaintiff stipulated was accurate, indicates that at the time of trial a "graveled lane" ran generally north/south along the eastern side of Defendants' land and that a fence ("the old fence") was located between the edge of Defendants' land and the graveled lane and ran parallel to the graveled lane.

In 1981, Jefferson Brook Franklin and Carol Franklin were married. At the time of his marriage to Mrs. Franklin, Mr. Franklin had sole ownership of both parcels now separately owned by Plaintiff and Defendants. The house in which the Franklins resided is on the land now owned by Defendants ("the western parcel"). The land now owned by Plaintiff ("the eastern parcel") was unimproved when Plaintiff purchased it. The old roadway, which sits between the eastern and western parcels, is 20 feet wide. At the time of the Franklins' marriage, the record owner of the old roadway was William S. Candler.

In 1989, Mr. Franklin transferred by quit-claim deed his sole ownership interest in the western parcel to himself and Mrs. Franklin as husband and wife. He made no such transfer of the eastern parcel, which remained in his sole name.

In 1995, the Franklins sold the western parcel to John and Linda McGann.[2] The

hibit 7, both Mrs. Franklin and the attorney deposing her referred to the sale to the McGanns and to the Franklin's contemporaneous move from the home as having occurred in 1997, but the general warranty

McGanns then conveyed the western parcel to Defendants in 2004. The general warranty deed from the Franklins to the McGanns described the western parcel as follows:

That part of the East Half of the Northeast Quarter of the Northwest Quarter of Section 12, Township 28, Range 13, lying South of the right-of-way of the new relocated Highway 60, EXCEPT a strip 20 feet wide off the East side thereof.

Mrs. Franklin believed the western parcel was bounded by and divided from the eastern parcel by the old fence, which was in existence when Mrs. Franklin first moved onto the property in 1981 and was still there when she moved away in 1995. To access the eastern parcel from the western, Mr. Franklin would go out the southern end of the western parcel onto old highway 60, travel east a short distance, then turn north into the eastern parcel through a gate located to the east of the old fence. That gate blocked access to the old roadway and opened onto it.

The old roadway was "grown up" and covered with grass when Mrs. Franklin moved onto the western parcel in 1981, but Mr. Franklin "cleaned it out" "and kept it mowed" at least monthly (except during the winter) and he "pulled a lot of the wild roses off [the old fence] so it looked better." The old roadway was never used as a road during the entire fifteen years that Mrs. Franklin lived on the property. Mr. Franklin mowed the old roadway with the rest of the eastern parcel. While she and Mr. Franklin lived on the western parcel, they were the only people who ever went onto the eastern parcel; it was fenced off from and was not open to the public.

To access the eastern parcel, Mrs. Franklin sometimes crawled through the old fence because the gate Mr. Franklin used to access it was too heavy for her. Mrs. Franklin picked "the most delicious pears" from trees along the eastern side of the old roadway. Instead of allowing others to harvest the pears, Mrs. Franklin would "pick them and take them to them." Mr. Franklin also did not let anyone harvest hay from the eastern parcel. "He just let it dry" after he cut it with something Mrs. Franklin called a "Hay field mower."

Even after the Franklins sold the western parcel and moved out of the house, Mrs. Franklin continued to pick pears from the eastern parcel. Although she did not recall her husband having gone back out to the eastern parcel after the move, "they" kept it, intending to someday build a new home there.

Mr. Franklin died in 2003. That same year, as personal representative of his estate, Mrs. Franklin sold the eastern parcel to Plaintiff, then known as "University Baptist." Mrs. Franklin testified that Mr. Franklin "had a will" and "willed everything to [her]." When she sold the eastern parcel to "the church," Mrs. Franklin intended to convey everything east of the old fence, including the old roadway, as she regarded the land east of the old fence as being "all one." The deed to "University Baptist," admitted into evidence as "Defendant's Exhibit P," described the parcel as:

All that part of the West one-fourth of the Northwest Quarter of the Northeast Quarter of Section 12, Township 28, Range 13 lying South of New US. Highway # 60 (except right-of-way for public roads), Wright County, Missouri.

deed, admitted into evidence as "Defendant's Exhibit N," bears the date of August 15, 1995.

The discrepancy is not material to the resolution of this appeal.

Although Mrs. Franklin believed that it did, this deed did *not* include the 20 feet on the eastern edge of the Northeast Quarter of the Northwest Quarter of Section 12 that was specifically excepted out of the deed the Franklins had earlier provided to the McGanns.

On July 30, 2008, after the dispute between the parties arose but before Plaintiff's original petition was filed on February 23, 2009, Mrs. Franklin, as "a single person," executed a quit-claim deed in favor of Plaintiff to:

> That part of the E 1/2 of the NE 1/4 of the NW 1/4 of Section 12, Township 28, Range 13 lying south of the right-of-way of the new relocated Highway 60.[ 3]

She did this because she wanted to make clear that all of the land east of the old fence was a part of Plaintiff's property. She had rejected an earlier request from Defendants to "sign a paper" in their favor.

Jason Davis was the pastor employed by Plaintiff at all pertinent times. He initially understood that the old fence marked the boundary line of Plaintiff's property. After the instant dispute arose, Mr. Davis thought that Mrs. Franklin's quit-claim deed "completed" what had been left out of the legal descriptions and gave Plaintiff what Mrs. Franklin had intended to convey to Plaintiff. When Plaintiff purchased the eastern parcel, the old roadway still appeared as a "slight depression, but it was just over grown in grass."

After Defendants purchased the western parcel in 2004, they did not mow or maintain the land on the east side of the old fence; all of the land on that side was maintained by Plaintiff. Mr. Schilling understood that the eastern "20 feet was excepted out of [the] deed" Defendants had received from the McGanns. Mr. Schilling admitted that Defendants did not maintain in any way the land on the east side of the fence until 2007, except to cut brush from around their electric meter, which was located on a pole near the fence line. Mr. Schilling believed that the old roadway "was potentially a public road; therefore, [sic] being abandoned."

Plaintiff first modified the eastern parcel by removing the southern fence and its gate across the old roadway. Plaintiff then constructed a church and other buildings on the eastern parcel. Plaintiff constructed a driveway on the west side of its property that circled around the church building and traveled toward the east side of the property. Each end of the driveway connected to old highway 60.

A member of the church board during the time of this construction, Douglas Waggoner, testified that the driveway started where the gate across the old roadway had been. Plaintiff improved the old roadway by "brushhogging," removing a "great deal" of growth, and by hauling in gravel. Defendant's Exhibits H and I, which were admitted into evidence, depicted the western end of the driveway. The photographs show the driveway traveling northward in the direction of new highway 60, then turning northeasterly around the church building. As a result of the curve, the driveway does not completely trace the path of the old roadway from old highway 60 to new highway 60. The area of the old

---

**3.** Thus, the legal description contained in the quit-claim deed from Mrs. Franklin to Plaintiff described more than just the eastern 20 feet specifically excepted from the McGanns' deed. The excess is not at issue as Plaintiff's first amended petition asserted only "superior right, title, and interest" in the eastern 20 feet of the eastern parcel. The trial court declared the portion of the legal description in Mrs. Franklin's quit-claim deed that was "broader than the [o]ld [r]oadway ... [as] void so as not to be a cloud on [Defendants'] title[.]" Plaintiff has not appealed that determination.

roadway north of the curve is depicted in Exhibit H as grass-covered land.

In 2008, Defendants took down a 30–foot section of the old fence, installed a culvert, brought in additional gravel, and installed "a couple of gates" to access what had then become a portion of Plaintiff's driveway. Mr. Davis said that Defendants told him they were doing this because it was a public road and they had a right to access and use it. Davis disagreed, telling Defendants "that they could not use that property, because we had a school facility, we had kids there, and our traffic flow for church." Mr. Schilling agreed that even without access to the old roadway, Defendants had access to old highway 60 and were not "land-locked."

In response to Defendants' actions, Plaintiff caused the culvert and gravel to be removed and blocked Defendants' new gate. After Plaintiff blocked Defendants' gate, Mr. Schilling investigated the land records. His investigation caused him to believe that Mr. Candler had owned the old roadway as a part of a longer strip that he presumably used to gain access to old highway 60 from a northern tract of land. The strip continued north from between the parties' property across what is now new highway 60 to the section line. Mr. Schilling located three of Mr. Candler's "heirs," and Defendants purchased quit-claim deeds from them in October and November 2008. These deeds purported to transfer title to the longer strip that contained the old roadway.[4] From that point in time, Defendants were assessed and paid taxes on the old roadway. Mr. Schilling claimed superior title to the old roadway by this "chain of title" he acquired from the Candler "heirs."

In May 2009, Plaintiff filed suit against Defendants to quiet title to the old roadway in Plaintiff, eject Defendants from it, and receive damages for Defendants' trespass. Defendants counter-claimed for quiet title, ejectment, and treble damages for trespass.

In late 2009, Ralph Riggs, a state-licensed and federal-certified land surveyor, was retained by Defendants. Mr. Riggs reviewed old surveys and certain deeds. He then surveyed the property for Defendants in 2010. Mr. Riggs testified, without objection, that it was his belief that Mr. Candler had held title, beginning as far back as 1924, to both a 160–acre tract of land located to the north of the parties' land and a 20–foot–wide strip of land (the old roadway) running down the eastern edge of the section. The next change of title Mr. Riggs saw in the records he reviewed was the quit-claim deeds Mr. Candler's "heirs" had provided to Defendants. In response to a question implied by the trial court's statement, "The Franklins never had title to that 20–foot strip[,]" Mr. Riggs stated, "Not—no."

### The Judgment

The trial court found that the eastern boundary of the western parcel, the old fence, and the old roadway were located as determined in Mr. Rigg's survey. As pertinent to the issues raised on appeal, the trial court found that Mr. Franklin had "acquired title to the [o]ld [r]oadway by adverse possession" under section 516.010, RSMo 2000, sometime before 2003 and that ownership of it then passed to Mrs.

4. Each of the alleged "heirs" provided an affidavit which stated that Mr. Candler's estate "has not been administered" and that the undersigned was "well acquainted" with Mr. Candler and his family and that the affiants were Mr. Candler's "sole and only heirs at law[.]" The quit-claim deeds and accompanying affidavits were admitted into evidence, without objection, as Defendants' Exhibit C.

Franklin after Mr. Franklin's death. As a result, the judgment quieted title to the old roadway in Plaintiff based on Mrs. Franklin's quit-claim deed, finding that "the Candler Deeds conveyed nothing to [Defendants] as title had already been divested [from the Candler "heirs"] by adverse possession." This appeal timely followed.

## Analysis

■ In Missouri, title is acquired by adverse possession if the claimed possession is "(1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession." *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo. banc 1974). Satisfaction of each element is necessary. *See Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo.App. E.D. 1998). "[O]nce the ten-year period has run, the possessor is vested with title and the record owner is divested." *Id.* at 470.

Defendants first claim the trial court erred in finding that Plaintiff acquired the old roadway from Mrs. Franklin in 2008 based upon Mr. Franklin's adverse possession of it "because there was no substantial evidence to establish" that Mr. Franklin's possession "was hostile, under claim of

right, and adverse to the true owner[.]" Second, Defendants claim:

> [Mr.] Franklin's transfer of property on the west and east sides of the old roadway in 1989, 1995 (and moved away [sic]) and 2003 (his estate) respectively, each of which either expressly excepted out the old roadway or failed to include the old roadway, are admissions of the existence of paramount title to the old roadway in someone other than the Franklins, so [Defendants] have the better title, and the trial court erroneously applied the law in not recognizing these admissions of paramount title.[5]

■ Curiously, the argument portion of Defendants' brief claims that "Plaintiff" did not acquire the old roadway by adverse possession and that "[a]t no time did the Franklins[6] or their successors hold title of record" to it. Neither of these asserted facts would render the trial court's judgment erroneous. The trial court did not find that "Plaintiff" had adversely possessed the old roadway; it found that Mr. Franklin had acquired title to the old roadway by adverse possession. It then found that this title passed to Mrs. Franklin upon Mr. Franklin's death. Finally, the trial court found that Mrs. Franklin's ownership of the old roadway was then conveyed to Plaintiff by her quit-claim deed. Thus, the question is not whether Plaintiff

---

**5.** Combining multiple claims of error violates Rule 84.04(d)(1)(A)'s requirement that a point "identify the trial court ruling or action that the appellant challenges[.]" Here, challenging both the substantial evidence to support the trial court's finding and the trial court's application of law in the same point identifies more than one ruling or action by the trial court. Despite this, we are able to discern the two basic contentions of the point and we exercise our discretion to review the claims. *Reynolds v. Brill*, 302 S.W.3d 716, 719 (Mo. App. S.D.2010).

**6.** Defendants also argue that Mrs. Franklin did not have possession or title herself in 2008. This contention is not included in Defendants' point relied on. The claims in the point address: 1) Mr. Franklin's lack of "hostile" possession (not either Mr. or Mrs. Franklin's *actual* possession); and 2) the alleged "admissions" made in deeds executed in 1989, 1995, and 2003. Claims not presented in the point relied on are not preserved for review. *American Fam. Mut. Ins. Co. v. Nigl*, 123 S.W.3d 297, 300–01 n. 2 (Mo.App. E.D. 2003). In any event, the evidence favorable to the judgment was that Mr. Franklin "willed everything" to Mrs. Franklin.

adversely possessed the old roadway, but whether—as set forth in Defendant's point—substantial evidence supported the trial court's finding that Mr. Franklin adversely possessed the old roadway.

### *"Hostile" Possession Shown*

■ Specifically, Defendants' point claims no substantial evidence established that Mr. Franklin's possession of the old roadway was "hostile, under claim of right, and adverse to the true owner[.]" Each of these assertions addresses the "hostile possession" element of an adverse possession claim. In the context of an adverse possession claim, "[h]ostility does not require ill will or malevolence, but is simply an assertion of ownership adverse to that of the true owner and all others[.]" *Schaumburg v. Heafey*, 650 S.W.2d 697, 698 (Mo.App. W.D.1983). *See also Walker*, 509 S.W.2d at 106. "Whether possession is hostile and under claim of right is a question of intent, though such intent may often be inferred from the claimant's acts of dominion over the land." *Flowers*, 979 S.W.2d at 469. Defendants' point does not attack the sufficiency of the evidence supporting the other necessary elements of adverse possession.

The substantial evidence before the trial court as to Mr. Franklin's hostile possession of the old roadway included Mrs. Franklin's testimony that from at least 1981 until the time of his death in 2003, Mr. Franklin alone controlled the gate that had been placed across the old roadway. Mr. Franklin treated the old roadway as his own; he possessed it by fencing it off and refusing to allow others to occupy or use it. He exercised dominion over it by clearing brush from it and mowing it on a regular basis. The first portion of Defendants' point fails.

### *No Admission of "Paramount Title in Another"*

■ Defendants' second claim is that the trial court "fail[ed] to recognize the Franklins' deeds prior to 2008 to be admissions of paramount title in another to the [o]ld [r]oadway." Defendants cite *Riebold v. Smith*, 150 S.W.2d 599 (Mo.App.St.L.D. 1941), as support for the proposition that possession is not hostile if the possessor implicitly admits that paramount title resides in another.[7] In *Riebold*, the alleged adverse possessors continuously used a piece of neighboring land for at least ten years. *Id.* at 601.

> [I]t nevertheless conclusively appeared from certain undisputed facts in the case that [their] possession of the land was not adverse to the true owner or owners, but that on the contrary, *during the running of the very period upon which [they] rely for the perfection of their title,* they affirmatively recognized the absence of their own title and thereby admitted the existence of a paramount title in some one other than themselves.

*Id.* at 602 (emphasis added). During the time of their alleged adverse possession, they—in preparation for a trip out of the country—prepared, executed, and recorded a deed that conveyed title to their lots from the mother to a daughter. They also

---

7. Interestingly, although *Riebold* has been cited in many subsequent opinions, *see, e.g., Reinheimer v. Rhedans,* 327 S.W.2d 823, 831 (Mo. banc 1959); *La Grange Reorganized Sch. Dist. No. R–VI v. Smith,* 312 S.W.2d 135, 138 (Mo. banc 1958); *Peterson v. Harpst,* 247 S.W.2d 663, 667 (Mo.1952); *Underwood v. Hash,* 67 S.W.3d 770, 775 (Mo.App. S.D. 2002); *Charlton v. Crocker,* 665 S.W.2d 56, 60–61 (Mo.App. S.D.1984); *Porter v. Posey,* 592 S.W.2d 844, 853 (Mo.App. E.D.1979); and *John v. Turner,* 542 S.W.2d 293, 300 (Mo.App.K.C.D.1976), the opinion itself states that it was "[n]ot to be reported in State Reports." 150 S.W.2d 599.

prepared another deed that would enable the daughter to return title to her mother upon their return. *Id.* Neither deed included the portion of land they claimed they were adversely possessing. *Id.* The *Riebold* court found that the "obvious implication" from these actions was that they did not claim title to anything "except the platted lots conveyed" and the alleged adverse possessors' own description of their property recognized that they did not have title to the land they were claiming by adverse possession. *Id.*

Assuming that *Riebold* may properly be relied on as precedent, what occurred in *Riebold* is not what happened here. In the instant case, Mr. Franklin began his hostile possession of the old roadway no later than 1981. Therefore, title to it vested in him by at least 1991. As a result, the 1995 warranty deed from the Franklins to the McGanns and the 2003 quit-claim deed from Mrs. Franklin to Plaintiff were executed at least ten years *after* Mr. Franklin had acquired title to the old roadway, not during the necessary statutory period as occurred in *Riebold.*

The transfer that did take place during the applicable ten-year time frame-the 1989 quit-claim deed from Mr. Franklin to himself and Mrs. Franklin for the western parcel-did specifically "except" the old roadway from the land being transferred. But as it also did not include the eastern parcel owned by Mr. Franklin, the 1989 transfer cannot be seen as an attempt by Mr. Franklin to convey (as in *Riebold* ) *all* of the real property he believed he owned. Under these circumstances, the trial court was not required to find that the 1989 quit-claim deed amounted to an admission by Mr. Franklin that someone else had superior title to the old roadway and thereby defeated Plaintiff's claim that Mr. Franklin was in hostile possession of the old road-

way for at least ten continuous years. Defendants' second claim also fails.

Substantial evidence supported the trial court's finding that Mr. Franklin was in hostile possession of the old roadway for a period of at least ten continuous years. None of the deeds admitted into evidence constituted an implicit admission by Mr. Franklin that superior title to the old roadway was held by someone other than himself. Defendants' point is denied, and the judgment of the trial court is affirmed.

NANCY STEFFEN RAHMEYER, J.-Concurs in Separate Opinion.

GARY W. LYNCH, J.-Concurs.

NANCY STEFFEN RAHMEYER, J.

Because of our standard of review, I concur in this opinion; my concern is that the use of adverse possession in this case is troubling on a policy basis. The evidence was that when Whetstone Baptist bought an empty pasture the pasture was fenced in and included what looked like an abandoned road leading to the new Highway 60 on it. The surveyor hired by the church indicated that there was a "lane" between the property deeded to the church and what is now the Shilling property. A year later, the Shillings bought the property to the west and also knew there was what appeared to be an abandoned road. There is no question that both parties knew there was a gap in the legal title. The Shillings sought assistance from county officials, were told it was an abandoned road, and began to improve and use the road. Whetstone Baptist blocked their use of the road by parking school busses on it and digging up the improvements. Initially, Whetstone Baptist claimed it had adverse possession for the five years from 2003–2008.

Ultimately, the Shillings obtained quit-claim deeds from the heirs of the prior

owners of the road. Whetstone sought a quitclaim from its predecessor in title, Carol Franklin. Whetstone relies upon that subsequent quitclaim on the theory that Mrs. Franklin acquired all of the eastern property in 2003,[1] including the adversely possessed road, that the property was not disposed of in the probate proceeding, and that Mrs. Franklin subsequently quitclaimed the adversely possessed property to Whetstone Baptist.

What is troubling is that at the time of the purchase, Whetstone Baptist knew that there was what appeared to be a road within the fence. In other words, it was on notice from its own survey that there appeared to be a public road or easement on the property. In fact, both parties before the trial court thought it was a public road. We have neither of the original owners before us. We have a claim of legal title (by way of the supposed heirs of the titled owners) versus a claim of adverse possession based upon the actions of parties who are no longer living. In other words, we have two "innocent" parties. The courts have to decide if there was hostile, actual, open and notorious, exclusive, and continuous possession based on the testimony of events that occurred long ago in time.[2] Mr. Franklin owned both pieces of property; he lived on the property the Shillings live on. If he adversely possessed the road, how is it that it should not have been adversely possessed for the benefit of the Shillings? It seems bizarre to me that a court must choose one of the parties under the doctrine of adverse possession of a common predecessor in title. I believe this case stretches adverse pos-

session beyond where it was intended to be.

---

1. In 1989, Mr. Franklin transferred by quitclaim deed his sole ownership interest in the western parcel (land now owned by Schillings) to himself and Mrs. Franklin as husband and wife; however, he did not transfer the eastern parcel (land now owned by Whetstone Baptist), which remained in his sole name. Mr. Franklin died in 2003 and that year, as personal representative of his estate, Mrs. Franklin sold the eastern parcel to Whetstone Baptist.

2. The time for adverse possession is from 1981 to 1994.