

# In the
# Missouri Court of Appeals
# Western District

STUART A. DEVORE AND VANDEE )
DEVORE, HUSBAND AND WIFE, )
                                    )   **WD79400**
         **Respondents,** )
                                    )   **OPINION FILED:**
**v.**                                )   **November 22, 2016**
                                    )
**LILLIAN VAUGHN, ET AL.,**     )
                                    )
         **Appellants.** )

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Jodie C. Asel, Judge

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Karen King Mitchell, Judge and Gary D. Witt, Judge

Lillian Vaughn, Beverly Gardner, Racine Vaughn, Meredith Udell Vaughn, Gary Wayne Vaughn, Keith H. Vaughn, and Michael Lee Vaughn (collectively the "Appellants") appeal from the judgment of the Circuit Court of Boone County, entered after a bench trial, quieting title and vesting fee simple absolute title through adverse possession of certain property located in Boone County, Missouri to Respondents Stuart and Vandee DeVore (collectively "the DeVores"). Appellants raise two points on appeal

challenging the trial court's findings that the DeVores' possession of the property was hostile and open and notorious for the required statutory periods. We affirm.

## Factual Background

This appeal involves the vesting of fee simple absolute title through adverse possession of a piece of property immediately adjacent to property owned by the DeVores. The DeVores are the recorded owners of 8.5 acres, described in a deed dated June 20, 2001, and recorded at Book 1743, Page 730, with the Boone County Recorder's Office as follows:

> The Northeast quarter of the Northeast quarter of the Northeast quarter of Section 28, Township 47 North, Range 12 West, Boone County, Missouri except 1 and 1/2 acres in the Northeast corner thereof conveyed to Lee Pierre Harris by deed dated May 11, 1962 and recorded in Book 317, Page 289, Records of Boone County, Missouri.

(The "DeVore Property").

The Appellants' parents James and Marjorie Vaughn became the recorded owners of the 1.5 acres adjacent to the DeVore Property on January 10, 1984.[1] The property was conveyed to them by deed dated January 3, 1984 and recorded with the Boone County Recorder's Office. The deed described the property as follows:

> One and one half acres in a square in the Northeast corner of the Northeast 1/4 of the Northeast 1/4 of Section 28, Township 47, Range 12 in Boone County, Missouri.

(The "Disputed Property"). The Disputed Property is bordered on the west and south by the DeVore Property and both properties are bordered to the north by East Woodson Harris Road. James Vaughn died in 1984, shortly after the Disputed Property was purchased.

---

[1] This 1.5 acres is the property described as excepted from the legal description of the DeVore Property described above.

Appellants inherited the Disputed Property after the death of their mother Marjorie Vaughn on July 18, 2010, and became the record owners of the Disputed Property in a Decree of Determination of Heirship on August 11, 2014.

On March 27, 2013, the DeVores filed a Petition asking that the trial court divest Appellants of any interest in the Disputed Property through adverse possession. The case was tried to the court on September 3, 2015.

The following evidence, in brief, was adduced at trial. The DeVores have lived on the DeVore Property from June 22, 2001 through the date of trial. The home in which the DeVores live was built in 1994, and 450 square feet of the home was built on the Disputed Property. In addition, a retaining wall connected to the house extended onto the Disputed Property. A fence, which ran from East Woodson Harris Road to the south line of the Disputed Property, was located 82 feet east of and parallel to the boundary line between the DeVore Property and the Disputed Property. The fence was maintained by the DeVores and all of the property west of the fence was used by the DeVores as a yard, which was kept regularly mowed and cared for.

The DeVores were aware they had only purchased 8.5 acres and knew the remaining 1.5 acres of the original 10-acre tract was owned by Marjorie Vaughn, although they did not personally know Marjorie Vaughn. The DeVores were not aware where the exact property boundary between their property and the Disputed Property was until a survey was conducted in 2014, which revealed that part of their home, retaining wall, and yard were located on the Disputed Property. Stuart DeVore testified that he had never seen Marjorie Vaughn or anyone else on the Disputed Property and immediately after he

3

acquired his property he began to treat the disputed property as his own and take care of the property.

The DeVores made significant improvements to their home and yard throughout their occupation of the premises and, naturally, resided thereon. The home, retaining wall, and yard were visible from East Woodson Harris Road. The remainder of the Disputed Property, not consisting of the DeVores' home and yard is located east of the above-described fence and is undeveloped and heavily wooded ("the Wooded Tract").

The DeVores conducted a number of activities on the Wooded Tract, including the creation and maintenance of a significant trail system, activities associated with hunting, and general recreation thereon. In addition, the DeVores took responsibility for maintaining the Wooded Tract, including installing a fence around an open well, and cleaned up after a utility company cleared a significant pathway under a utility line. The DeVores were regularly on the Wooded Tract for many activities. The DeVores testified they would have excluded Marjorie Vaughn and the Appellants from the Disputed Property, including the Wooded Tract, because they considered it their own. However, neither Marjorie Vaughn nor the Appellants were seen on the Disputed Property between 2001 and 2013.

Marjorie Vaughn lived on East Woodson Harris Road, a dead-end road, past the DeVore Property such that to reach her home one would have to drive by the Disputed Property and the DeVore Property. Neither Marjorie Vaughn nor the Appellants ever gave permission to the DeVores to use any portion of the Disputed Property.

4

The trial court entered judgment in favor of the DeVores, quieting title and vesting fee simple absolute title through adverse possession of the entire Disputed Property, including the Wooded Tract, to the DeVores. This appeal follows. Additional facts will be presented as relevant in the analysis section below.

## Standard of Review

> In a court-tried case, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded." *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo. App. S.D. 2002). This court defers to the trial court's determination of the credibility of witnesses and the weight to be given to their testimony. *Id.*

*Murphy v. Holman*, 289 S.W.3d 234, 237 (Mo. App. W.D. 2009).

## Analysis

## Point One

In Point One, Appellants argue that the trial court erred in quieting title and awarding fee simple absolute title by adverse possession to the entire Disputed Property to the DeVores because the judgment's finding that the DeVores' "intent to possess all of the Disputed [Property] was hostile" is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law,[2] in that the DeVores had no claim of right to the Disputed Property, they knew that they did not own the property

---

[2] In both Points One and Two on appeal, Appellants raise multiple claims of error in the same point relied on which is not permissible under our rules. A substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge are distinct claims and must be raised separately. *See Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2013). This Court will gratuitously address the merits of Appellants' claims. Counsel should take caution to follow Rule 84.04(d).

and that Marjorie Vaughn owned the property during her life and her children owned it after her death, and the DeVores had no claim of ownership or title as is legally required by the doctrine of adverse possession.

"To prevail on a claim of adverse possession, a claimant must prove by a preponderance of the evidence that his possession of the tract of land was: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years." *Daniels-Kerr v. Crosby*, 484 S.W.3d 798, 802 (Mo. App. W.D. 2016). "To satisfy the hostile element, the claimant must show that he intended to occupy the disputed parcels as his own." *Brasher v. Craig*, 483 S.W.3d 446, 451 (Mo. App. W.D 2016) (quoting *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo. App. W.D. 1996)). The intent to possess the land "may be inferred from his or her acts of dominion over the land.*" Sommerlath v. Voss*, 449 S.W.3d 390, 394 (Mo. App. E.D. 2014).

Appellants argue that mere possession of property cannot ripen into adverse possession without some claimed legal right or a mistaken belief as to a legal right to the property. They interpret language in our cases saying the possession must be "hostile" and "under a claim of right" as requiring some good faith belief in legal ownership, perhaps manifested by colorable title to the property, before possession can ripen into adverse possession.

Whether a claimant believes he does or does not have title to or other legal claim to the disputed property is not the proper inquiry in Missouri as the intent that must be demonstrated is solely the intent to occupy the disputed property as one's own. Missouri cases have consistently held that to satisfy the "hostile," i.e. under a "claim of right"

6

element only requires that the adverse possessor show the intent to occupy the disputed property as his own, exclusive of the rights of all others. *See Brasher*, 483 S.W.3d at 451; *Kitterman,* 924 S.W.2d at 876; *Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo. App. S.D. 1997) ("Hostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own"). In analyzing the "hostile" element, Missouri courts do not consider the good faith or motivation of the adverse possessor; we do not attempt to peer into the mind and make contingent the claimant's proof of hostility on *why* he is claiming ownership over the land. "To be hostile, it is not necessary to have actual malice, hostility, indifference or intent to take the property which belongs to another. The intent to possess, occupy, control, use and exercise dominion over the property is sufficient." *Trokey v. R.D.P. Dev. Grp*., L.L.C., 401 S.W.3d 516, 525 (Mo. App. S.D. 2013). To gauge this intent, we look at the acts of dominion the claimant performs on the land and not to his intent with respect to the rights of others. *See Rohner v. Beets*, 396 S.W.3d 458, 461 (Mo. App. W.D. 2013) ("The claimant must occupy the land with the intent to possess it as her own. The claimant's occupancy must be in defiance of, rather than in subordination to, the rights of others. Intent may be inferred from her acts of dominion over the land.")

The language in recent cases addressing the hostility of ownership for the purposes of adverse possession has been perhaps frustratingly abstruse regarding whether a claimant who knows from the outset that he/she has no legal claim to property may still possess property in a hostile manner, that is under a claim of right. The answer to that question in Missouri is unequivocally yes. In 1961, the Missouri Supreme Court squarely addressed this issue in *Gates v. Roberts*, 350 S.W.2d 729 (Mo. 1961). In *Gates*, the claimant and his

family were about to lose their home because they could not meet their financial obligations under the note and deed of trust. *Id*. at 731. Near to where the family lived was a lot with a partially constructed home that was unfinished and was empty. *Id*. With no legal right to enter and possess the property, under title or otherwise, the family took possession of the property, began living in the home and treated it as their own. *Id*. Many years later, the owner of record of the disputed property deeded the property to the plaintiff in the case who filed suit. *Id*. In *Gates*, the plaintiff argued that the evidence failed to establish the necessary element of "hostile" possession as there was "no evidence that [the claimant] entered the property under any claim of right" and "that he did not enter under color of title." *Id*. at 731-32.

The Supreme Court defined "hostility" as "possession opposed and antagonistic to the claims of all others" and "imports the occupation of land by the possessor with the intent to possess the land as his own." *Id*. at 732. The Supreme Court found

> [Claimant] and his family descended upon the property, moved in right under the nose of the record owner, cleaned up the place, completed the construction of the building and made substantial additions thereto, planted an orchard and lived in actual, open and notorious, continuous, and exclusive possession of the property, *under claim of right, as against the whole world including the record owner*, who lived only a stone's throw from Lot 18, for a period of more than 20 years. *While it is true that [Claimant] did not enter under color of title it is the general rule, in the absence of statutory requirement, that color of title is not a necessary element in order to originate and perfect title by adverse possession*.

*Id*. (emphasis added). Although the claimant in *Gates* later acquired tax deeds to the property, the Missouri Supreme Court was clear that color of title is not necessary to either originate or perfect title by adverse possession. *Id*. There was no basis in fact for the

claimant in *Gates* to believe he had *any legal right* to the property. The claimant in *Gates* was not operating under a mistaken belief or good faith belief that he had a legal right to the property, but rather exercised a naked assertion of ownership.

As made clear in *Gates*, the state of mind of the claimant with regard to his motivation for possessing the land is immaterial. The only intent that is necessary is the intent to occupy and possess the land exclusive of the rights of all others, and no colorable title or other legal claim or good faith belief as to ownership of the property is necessary. This principle has been repeatedly affirmed by our courts as we have explained that a mistaken belief that one has title to the land has no bearing on the analysis of whether the possession is hostile to the rights of the true owner. *See Kitterman*, 924 S.W.2d at 876; *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974); *Witt v. Miller*, 845 S.W.2d 665, 668 (Mo. App. E.D. 1993). Left unstated in many of these decisions is the corollary, which is equally true, that the knowledge that one does not have title or other legal right to possess the property as one's own has no bearing on whether the claimant is occupying the property in a hostile manner, i.e. under a claim of right.[3]

---

[3] Appellants rely on *Moore v. Dudley*, 904 S.W.2d 496 (Mo. App. E.D. 1995), a case in which a claimant knew she was trespassing and intended to take the land by adverse possession. There, the court held that, in addition to the possession failing to meet the "open and notorious" standard, the claimant had no claim of ownership or title and, thus, her occupancy could not ripen into adverse possession. *Id*. at 498. First, the result in that case did not rely on the question of hostility as the court had first determined the open and notorious standard had not been met and therefore this language is dicta. Second, the cases that the *Moore* court rely on for this proposition do not support the principle as enunciated. The court relies upon *John v. Turner*, which states the proposition that "[p]ossession of land in recognition of a lack of title is insufficient to ripen into title by adverse possession." 542 S.W.2d 293, 300 (Mo. App. 1976). In that, case, however, the court found that the claimant's use of the property was actually permissive and the court cites to *Gates*, which, as explained in the body of the opinion, stands for the opposite proposition. *See Gates*, 350 S.W.2d at 732. It does not appear that *Moore* has been relied upon by any subsequent cases and, insofar as it states the proposition that a claimant's occupancy of land cannot ripen into adverse possession absent title or other colorable good faith legal claim to the property, it should not be followed.

9

Part of the confusion regarding the "hostile" element may be due to our courts referring to this element of adverse possession as "hostile and under [a] claim of right." *See e.g., Tetrault v. Yankowski*, 460 S.W.3d 43, 51 (Mo. App. E.D. 2016); *Whetstone Baptist Church v. Schilling*, 381 S.W.3d 366, 373 (Mo. App. S.D. 2012). The original language used by Missouri courts did not use a conjunction to connect the two terms but rather clarified that "hostile" means under a claim of right. *See e.g., State ex rel. Edie v. Shain*, 348 Mo. 119, 122 (Mo. 1941) ("These elements are: (1) That the possession must be hostile; that is, under a claim of right"); *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo. 1974) ("The possession must be (1) hostile, that is, under a claim of right"); *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009) ("To acquire title by adverse possession or prescription, possession must be: (1) hostile, that is, under a claim of right"); *Ferguson v. Hoffman*, 462 S.W.3d 776, 780 (Mo. App. W.D. 2015) ("For title to be acquired by adverse possession, possession must be: (1) hostile, meaning under a claim of right"). Sometimes both formulations are used in the same case. See *Whetstone Baptist Church*, 381 S.W.3d at 372-73. "Hostile" and "under a claim of right" are not two separate elements but are one in the same. Hostility, that is, a claim of right, does not require color of title,[4] mistaken belief, or good faith but *only* that the claimant acts with the intent to occupy the disputed property as his own, exclusive of the rights of all others. *See Brasher*, 483 S.W.3d at 451.

---

[4] In Missouri, "color of title" is generally relevant where an adverse possessor under color of title enters into actual possession of only part of a tract described in an instrument. Without color of title, the claimant would only be entitled to adversely possess the part of the tract the he has taken into his actual possession. However, if the claimant enters and actually possesses only part of a tract under color of title, a court may find that his possession will extend to the full tract described in the title. *See e.g., Moran v. Roaring River Dev Co.*, 461 S.W.2d 822, 829 (Mo. 1970); *see also* Section 516.040.

Appellants' Point One on appeal only argues that the trial court erred in finding that the possession was hostile because the DeVores had no "claim of right" by title or otherwise but instead knew that title to the Disputed Property was held by another. As explained above, this is not the proper legal standard and does not preclude a finding that the DeVores' occupancy of the Disputed Property was hostile. A "claim of right" does not depend on color of title and does not require the claimant to have a good faith belief that he has a legal right to the property. It only requires that the claimant acts with the intent to occupy the disputed property as his own, exclusive of the rights of all others.

Appellants do not contest the facts as found by the trial court supporting its conclusion that the DeVores' possession of the Disputed Property was hostile. The trial court cited the following evidence as support for its conclusion: (1) the DeVores lived in and made substantial improvements to the portion of their home located on the Disputed Property and maintained their yard located on the Disputed Property; (2) the DeVores mowed into the Wooded Tract of the Disputed Property, including mowing an extensive trail system, with trails seven to ten feet wide, and maintained them up to the filing of the petition; (3) the DeVores installed wire pens around brush to protect quail habitats and used them to train bird dogs; (4) the DeVores hunted on the Disputed Property, placing salt and mineral blocks and corn thereon and installing a deer stand; (5) the DeVores cut down dead trees and stacked dead wood on the Disputed Property, and burned various areas; (6) the DeVores gave permission to the utility company to cut a path through the trees underneath power lines and the DeVores cleaned up brush and wood left behind after the clearing; (7) the DeVores harvested walnuts and berries on the Disputed Property, had picnic lunches

11

thereon, and their son played airsoft on the property. There was also evidence that the DeVores excluded others from the Disputed Property; for example, requiring that their neighbors who had set up a deer blind on the Disputed Property remove it. Appellants do not argue that these findings are not supported by the record. We find, as a matter of law, this evidence is sufficient to support the trial court's finding that the DeVores intended to occupy the Disputed Property as their own to the exclusion of all others. Further, this finding was not against the weight of evidence at trial.

Point One is denied.

## Point Two

In Point Two on appeal, Appellants argue the trial court erred in quieting title and awarding a fee simple absolute title by adverse possession to the entire Disputed Property because the trial court's conclusion that the DeVores' use of the Wooded Tract of the Disputed Property was "open and notorious" is not supported by substantial evidence, is against the weight of the evidence, and erroneously declares and applies the law, in that there is no evidence that the DeVores' use of the Wooded Tract of the Disputed Property was conspicuous, widely recognized, and commonly known as required by the doctrine of adverse possession since none of the DeVores' improvements were visible from outside the property and Appellants had no notice, actual or constructive, of the DeVores' claim of possession.

The requirement that possession be "open and notorious"

"is satisfied by visible acts of ownership exercised over the premises, such as maintaining and improving the property." *Lancaster v. Neff*, 75 S.W.3d 767, 772 (Mo. App. W.D. 2002)(quotation marks and citation omitted). It

12

> "is demonstrated by showing that the occupancy on the disputed property was conspicuous, widely recognized, and commonly known." *Bowles v. McKeon*, 217 S.W.3d 400, 405 (Mo. App. S.D. 2007). "This requirement exists to ensure that the legal owner had cause to know of the adverse claim of ownership by another." *Id.* When the land in question "is wild, undeveloped and covered in woods and hills" what is required to satisfy the "open and notorious" element may very well be increased. *Luttrell v. Stokes*, 77 S.W.3d 745, 749 (Mo. App. S.D. 2002).

*Schroeder v. Proctor*, 280 S.W.3d 724, 727 (Mo. App. W.D. 2009).

On appeal, Appellants do not contest the trial court's finding that the portion of the Disputed Property consisting of the DeVores' home and yard was open and notorious. Instead, they contest the trial court's finding that the DeVores' possession of the Wooded Tract was open and notorious. Accordingly, we will limit our discussion and address the evidence with regard to the DeVores' possession and use of the Wooded Tract.

The trial court found that the DeVores' possession of the Wooded Tract was open and notorious as anyone having any claim to the property would have had notice of the DeVores' claim to the property. The trial court found that the power line path cut into the Wooded Tract was cleaned up and maintained by the DeVores, which would have been visible from East Woodson Harris Road. There was testimony, credited by the trial court, that an entrance to the trail system created and maintained by the DeVores on the Wooded Tract was also visible from East Woodson Harris Road.

The trial court also made the inference that many of the activities conducted on the Wooded Tract would have been apparent to persons traveling on East Woodson Harris Road, including the sounds of mowing, the cutting of wood along East Woodson Harris Road, including along the Wooded Tract, and smoke from burning on the Wooded Tract.

13

A neighbor also testified that she saw the DeVores maintain the Wooded Tract, including trimming trees along East Woodson Harris Road. She testified that to her it appeared the DeVores owned the Disputed Property. Given that the owner of the Disputed Property, Marjorie Vaughn, lived farther down East Woodson Harris Road and had to pass by the Disputed Property each time she went to or from her house, the trial court concluded that Vaughn and the Appellants had constructive notice of the DeVores' claim to the property.

Appellants argue that some of the facts found by the trial court are not supported by the record. There was testimony from witnesses that the trail system could not be seen from East Woodson Harris Road. Vandee DeVore, however, testified that the entrance to the trail system could be seen from the road. The trial court could infer from her testimony that while it may be difficult to see the trails, at least some portion is visible from the public roadway and we defer to the trial court's acceptance of this testimony. *See Murphy,* 289 S.W.3d at 237.

Appellants also argue that the trial court's finding of constructive notice due to activities on the Wooded Tract, including noises and smells from mowing, the use of a chainsaw, and burning on the property are speculative. While there was testimony that these actions occurred on the property, which Appellants do not contest, they argue there was no evidence that the Appellants actually drove past the property and would have known these activities were occurring on the Wooded Tract. Appellants' argument must fail as it is well settled that "the condition of open and notorious conduct does not require proof that the true owner have actual knowledge of the claim, only that the occupancy be conspicuous, widely recognized and commonly known." *Scott v. Rorebeck*, 766 S.W.2d

14

659, 664 (Mo. App. W.D. 1989) (citing *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo. App. 1977)).

> Knowledge or notice has been held to mean knowledge of all that would be learned by reasonable inquiry. If actual knowledge is not proved then the claimant must show an occupancy so obvious and well recognized as to be inconsistent with and injurious to the real owner's rights that the law will authorize a presumption from the facts that he had such knowledge.

*Stratford v. Long*, 430 S.W.3d 921, 927 (Mo. App. S.D. 2014) (internal citations and quotations omitted). It was a reasonable inference that the DeVores' actions on the Wooded Tract would have provided notice to Marjorie Vaughn, and subsequently to the Appellants, of the DeVores' claim on the Wooded Tract had there been a reasonable inquiry.

The cases cited by Appellants in support of their argument that the facts here are insufficient to show open and notorious possession are factually distinct from the case at bar. In *Teson*, the court found the possession by the claimant was not open and notorious because his presence on the disputed wooded property was only "sporadic" and "confined to small areas which he could clear with hand equipment." 561 S.W.2d 119, 130 (Mo. App. 1977). The property was densely covered with trees, and the progress he made clearing the property was not visible. *Id.* Unlike *Teson*, here we have continuous possession and use of the property and testimony that at least some of the improvements made on the property were visible from a public road. The improvements certainly would have been obvious had the Appellants visited the property.

Appellants also cite *Moore v. Dudley*, a case in which the claimant sought to adversely possess seventeen acres of woods. 904 S.W.2d 496, 497 (Mo. App. S.D. 1995). The property was remote with no buildings or houses nearby. *Id.* In that case, claimant

did many of the same things as in the present case, including clearing underbrush, blazing and painting trees, grading rough roads, hunting, riding horses, and driving vehicles on the property. *Id*. at 498.

It is vital to remember that

[a]dverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique. "Each case must be decided in light of its own unique circumstances. Much depends on the location, the character and the use to which the land in question may reasonably be put."

*Kohler v. Bolinger*, 70 S.W.3d 616, 619 (Mo. App. W.D. 2002) (quoting *Kitterman*, 924 S.W.2d at 876). Contrary to *Moore*, the land in question in this case was not remote. Part of the DeVores' property was actually built on the Disputed Property and the Wooded Tract was adjacent to their home. The record owners of the Disputed Property did not live far away but rather had to pass by the Disputed Property, including the Wooded Tract, nearly *every day*. While in *Moore* the court held that the trial court could have found that actions of the claimant were insufficient to show open and notorious possession due in large part to the remoteness of the property, the character of the Disputed Property and Wooded Tract in this case are sufficiently distinct as to warrant a different outcome.

Given the circumstances here, we agree that there was sufficient evidence from which the trial court could find the DeVores' possession and use of the Disputed Property, including the Wooded Tract, was open and notorious. For a period of twelve years the DeVores treated the Disputed Property as their own. Their home was built on a portion of the Disputed Property and another portion was used and maintained by them as a yard. The remainder of the Disputed Property, the Wooded Tract, was used solely by the DeVores.

16

They used the Wooded Tract as one would expect for an undeveloped piece of land. They cut a network of trails through the property, trimmed trees, cleaned up debris, made the property safe by fencing off an open well, hunted, installed hunting apparatuses, and excluded others from the property. Neighbors testified that they never saw anyone else on the property and that the DeVores treated it as their own. Some of the DeVores' actions on the property were visible, such as a constructed trail through the Wooded Tract and the clean-up and maintenance of a large swath of cleared property under a power line created by the utility company. Some things were not visible from the road but also would have put the Appellants on notice, including burning, the use of a chainsaw to maintain the property, and mowing. These actions could have been discovered by the Appellants through reasonable inquiry, especially in light of the fact that Marjorie Vaughn, until her death, would have had to travel past the Wooded Tract to get to her home, and the Appellants would have had to do the same each time they visited Marjorie Vaughn's home. The trial court's finding that the Appellants had constructive notice of the DeVores' claim and possession of the Disputed Property, including the Wooded Tract, is supported by the record and not against the weight of the evidence.

Point Two is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Gary D. Witt, Judge

All concur

17