

# In the
# Missouri Court of Appeals
# Western District

DEANNA L. DANIELS-KERR,

      Appellant,

v.

MONTE G. CROSBY, ET AL.,

      Respondents.

WD78484

OPINION FILED:

MARCH 29, 2016

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable R. Michael Wagner, Judge**

**Before Division Four: Alok Ahuja, P.J., Anthony Rex Gabbert, J., Thomas Fincham, Sp. J.**

Deanna L. Daniels-Kerr (Daniels-Kerr) appeals the circuit court's judgment entered against her and in favor of Monte G. Crosby (Crosby) on Daniels-Kerr's Second Amended Petition for Adverse Possession and to Quiet Title. Daniels-Kerr asserts two points on appeal. First, she contends that the circuit court's ruling against her on her claim of adverse possession was against the weight of the evidence because the evidence supported a finding that she had proven adverse possession of the disputed property. Second, she asserts that the circuit court's ruling that there was no easement by prescription was also against the weight of the evidence. We affirm.

The undisputed evidence at trial, as applicable to our decision, was that in 1983 Jerry Kerr purchased a ninety acre tract of land (Daniels-Kerr land) near C Highway in Cass County.

In approximately 1984 or 1985, Jerry Kerr constructed a house for his father, Donald Kerr, on the southwest corner of the property and Donald Kerr resided in that home from 1985 until approximately 2004 when he went to reside in a nursing home. In 1997, Jerry Kerr and his then wife, Daniels-Kerr, transferred the deed to the home and seven of the ninety acres to Donald Kerr. After Donald Kerr's death in 2005, Daniels-Kerr reacquired the seven acres and home from Donald Kerr's estate.

In 1984, George Crosby purchased approximately forty acres of land (Crosby land) immediately south of the Daniels-Kerr land and built a home thereon in 1985.[1] The disputed property consists of an area between two fences on the north side of the Crosby land, running in an east-west direction and upon which exists a lane approximately one quarter of a mile in length. The lane intersects with State Route C. Donald Kerr's former home, located on the southwest corner of the Daniels-Kerr property, contains a driveway that connects to the lane. Donald Kerr used that lane from 1985 until 2004 to access the driveway to his home. Jerry Kerr, Daniels-Kerr, and the Crosby family also used the lane throughout the years without hindrance. There is no dispute that the deed description of the Crosby land contains the property in dispute. Greg Bowers, a surveyor called as a witness by Daniels-Kerr, testified to that fact and to surveys conducted in 1985 and 2012 by Bowers and/or his company.

In 2012, Daniels-Kerr filed a Petition for Adverse Possession and to Quiet Title to the disputed property. At trial, both Daniels-Kerr and Crosby presented evidence. During trial, Daniels-Kerr asked that the pleadings be amended to conform to the evidence and that the court, if denying Daniels-Kerr's claim for adverse possession, find that Daniels-Kerr had at least gained a prescriptive easement to the lane located upon the disputed property. After hearing evidence,

---

[1]In 2012, George and his wife sold the property to their son, Monte Crosby.

the court entered judgment in favor of Crosby and against Daniels-Kerr on Daniels-Kerr's claims for adverse possession, prescriptive easement, and quiet title. Daniels-Kerr appeals.

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* at 123. "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique." *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo. App. 1996). "Each case must be decided in light of its own unique circumstances." *Id.* (internal quotations and citation marks omitted). "We start with the presumption that the court's judgment is correct and appellant has the burden to show otherwise." *Pike v. Williamson*, 403 S.W.3d 608, 612 (Mo. App. 2011) (internal quotations and citations omitted). We defer to the trial court's credibility determinations, recognizing that the court is free to accept or reject all, part, or none of the testimony presented. *Soderholm v. Nauman*, 466 S.W.3d 610, 617 (Mo. App. 2015).

In Daniels-Kerr's first point on appeal, she contends that the circuit court's ruling against her on her claim of adverse possession was against the weight of the evidence because the evidence supported a finding that Daniels-Kerr had proven adverse possession of the disputed property. We disagree as we find the trial court's factual determinations, which are supported by the record and to which we defer, dispositive of this claim.

"To prevail on a claim of adverse possession, a claimant must prove by a preponderance of the evidence that his possession of the tract of land was: (1) hostile, (2) actual, (3) open and

3

notorious, (4) exclusive, and (5) continuous for a period of ten years." *Soderholm,* 466 S.W.3d at 619. "A claimant may tack his period of adverse possession on to that of his predecessors to meet the ten-year requirement." *Nutting v. Reis*, 326 S.W.3d 127, 129 (Mo. App. 2010). Failure to prove even one element is fatal to a claim of adverse possession. *Newbill v. Forrester-Gaffney*, 181 S.W.3d 114, 120 (Mo. App. 2005).

Daniels-Kerr claims that she acquired adverse possession of the disputed land by tacking onto Jerry Kerr's adverse possession of the land from 1983 to 1997, and Donald Kerr's possession of the land thereafter from 1997 until he left his home in 2004. Yet, Daniels-Kerr failed to prove at trial that Jerry Kerr or Donald Kerr ever acquired the land by adverse possession such that she could tack onto their claims.

With regard to Donald Kerr's use of the land, the trial court found that, in 1985, George Crosby expressly permitted Donald Kerr to use the property as needed for access to his home. The court found that this permission was given after George Crosby shared with Donald Kerr the results of a survey showing the disputed land to be within Crosby's property boundary. This finding is supported by the evidence. George Crosby testified that, in 1985, immediately after Donald Kerr's home was built on the Daniels-Kerr property and a driveway was built adjoining Donald Kerr's home and the disputed lane, George had a survey completed. George testified that the survey revealed that the disputed land, including the lane used by Donald Kerr to access the driveway to his home, was within the boundaries of the Crosby land. George then shared the results of the survey with Donald Kerr. George testified:

> I was visiting with Don and told him that I had had that corner surveyed
> and that road was on my property and Don says, 'Well, I guess I probably won't
> get to use it now' and I told him, I said, 'Well, I thought I would charge you a toll

4

for it anyway' and he kind of chuckled and I said, 'No, Don, you have permission

to use that road any time.'

Daniels-Kerr's witness, surveyor Greg Bowers, verified in his testimony that his company

conducted a survey of the Crosby land in 1985 and that the survey showed the disputed land to

be within the boundaries of the Crosby land.

The aforementioned factual finding by the court, that Donald Kerr was given permission

by George Crosby to use the disputed property, negates the possibility that Donald Kerr was

instrumental in acquiring for himself or for Daniels-Kerr any portion of the disputed land by

adverse possession. A grant of permission is inconsistent with the hostility element of adverse

possession. *Rohner v. Beets*, 396 S.W.3d 458, 462 (Mo. App. 2013). "Possession is hostile if it

is antagonistic to the claims of all others.… The claimant's occupancy must be in defiance of,

rather than in subordination to, the rights of others." *Cooper v. Carns*, 263 S.W.3d 729, 733

(Mo. App. 2008).

Further, Daniels-Kerr failed to prove that Jerry Kerr exclusively held the property such

that he acquired title by adverse possession. Proof of the exclusivity element necessarily

involved showing that the record owner, George Crosby, was excluded from his own property.

*Cunningham v. Hughes*, 889 S.W.2d 864, 867 (Mo. App. 1994).

The rightful owner cannot be deprived of his title by the possession of another,

although such other person clams [sic] to own it, if the rightful owner is also in

possession during the same time the adverse claimant is in possession. Any sort

of joint possession with the owner is not sufficient to support title by adverse

possession. The owner must be wholly excluded from possession by such

claimant for the stated period.

5

*Id.* (quoting *Fiorella v. Jones*, 259 S.W. 782, 785 (Mo. 1923). Here, the trial court expressly found that, beginning in 1985, George and Alice Crosby continuously occupied the house on the Crosby land for twenty-seven years and, during that time, the Crosbys not only owned the disputed property as revealed in the 1985 survey, but also treated and used the disputed property as their own; they mowed the property, trimmed trees on the property, cut brush on the property, hunted on the property, and walked the property for exercise. The court found that the Crosby's use of the disputed property was far more than sporadic, temporary or permissive, and that, even though Daniels-Kerr and her predecessors used the disputed land in varying degrees of frequency over the years, her use and that of her predecessors did not usurp the Crosby's use.

The record reflects that the Crosbys always treated the land as their own by actual, open and notorious, and continuous use; Daniels-Kerr makes no attempt to dispute that fact. She seems to suggest, nevertheless, that she could gain title to the Crosby land if she *also* engaged in actual, open and notorious, and continuous use of the land. There is no support in the law for this contention. Further, Donald Kerr was the only Kerr who actually lived on the property adjoining the disputed property, and the court found that his use of the disputed property was by permission. The court expressly found that Jerry Kerr's and Daniels-Kerr's use of the disputed property was occasional, never exclusive, and no attempt was made by them to make the use exclusive. George Crosby's testimony at trial supports the court's factual findings and, therefore, the court's conclusion that Daniels-Kerr failed to prove the exclusivity element for adverse possession was not against the weight of the evidence. Daniels-Kerr's first point on appeal is denied.

6

In her second point on appeal, Daniels-Kerr asserts that the circuit court's ruling that there was no easement by prescription to the lane located on the disputed property was against the weight of the evidence. We find no error.[2]

"There is a difference between adverse possession and a prescriptive easement. Acquiring *title* by adverse possession and acquiring *use rights* through an easement by prescription are different theories that require proof of different elements." *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 118 n13 (Mo. banc 2010). To succeed on a claim for a prescriptive easement, Daniels-Kerr must have proven continuous, uninterrupted, visible and adverse use of the disputed land for a period of ten years. *Id.* at 118. "Missouri law does not favor prescriptive easements." *Id.* at 119. Although title by adverse possession need only be proven by a preponderance of the evidence, a prescriptive easement must be proven by clear and convincing evidence. *Rohner*, 396 S.W.3d 464 n7. Use that is permissive cannot be grounds for a prescriptive easement because permissive use destroys the adversity requirement. *Hirsch v. Ebinger*, 334 S.W.3d 695, 698-699 (Mo. App. 2011).

Here, the trial court denied Daniels-Kerr's plea for a prescriptive easement to the lane on the grounds that, "because Donald Kerr's use of the disputed property was with the express permission of George Crosby, the Plaintiff is not entitled to a prescriptive easement[.]" Daniels-Kerr argues that this finding was against the weight of the evidence because the evidence showed that neither she nor Jerry Kerr received express permission to use the lane, and Jerry Kerr was

---

[2]Along with arguing that the court's judgment was not against the weight of the evidence, Crosby contends that Daniels-Kerr's second point on appeal should also fail because Daniels-Kerr failed to plead a claim for prescriptive easement in her petition. While this appears to be true, the transcript reflects that Crosby made no objection when, prior to resting her case, Daniels-Kerr asked the court that the pleadings be amended to conform to the evidence and that the court find that, at the very least, Daniels-Kerr had proven a right to continued use of the gravel lane by prescriptive easement. As Crosby failed to object and the trial court ruled on the claim of prescriptive easement, it appears the matter was tried by consent and the pleadings amended pursuant to Rule 55.33(b).

the record owner of the adjoining property from 1983 to 1997 and used the lane continuously, openly, notoriously, and adversely for at least ten years, thereby establishing a prescriptive easement. We disagree.

We first point out that, while Jerry Kerr may have been the record owner of Donald Kerr's home from the time it was built in 1985 until Jerry transferred the deed to Donald in 1997, Jerry testified that Donald was always a co-owner of the home which included the driveway that the disputed property provided access to. Jerry testified that, when Jerry's mother (Donald's wife) died, Donald no longer wanted to live in the family home in the city and requested that Jerry build him a house. Jerry testified that, at that time, Donald did not have all of the funds necessary to build the home, "so I paid for half and he paid for half and I deeded the property to him at a later date." Thus, Donald's occupancy from 1985 to 1997 of the land abutting the disputed property was as a co-owner of the property and not merely as a tenant; from 1997 to 2004, Donald was full owner of the house, driveway, and seven acres abutting the disputed property. Donald was the only Kerr family member who resided on the property and, the evidence suggests, was the Kerr family member who used the lane most extensively as he used it to access his driveway. The court described Jerry Kerr's and Daniels-Kerr's use of the lane as follows:

> That since acquiring her interest in the Daniels land in 1983, Plaintiff and/or Jerry Kerr, having never lived on the Daniels land, utilized the disputed property in varying degrees of frequency for egress and ingress, mowing the disputed property, twice placing gravel on the disputed land, and occasionally using the disputed land to move cattle and horses and the occasional use of the disputed property by dump truck drivers employed by Jerry Kerr's construction company.

8

We find that, even if these factual findings by the court regarding Jerry Kerr's and Daniels-Kerr's use of the lane could establish that they used the lane continuously, openly, and notoriously for ten years, these findings do not show that their use of the lane was adverse.

> Mere use of a passage over another's land for a long time with his knowledge is not necessarily an adverse use and *if* it is permissive in its inception, such permissive character, being stamped on the use at the outset, will continue of the same nature and no adverse user will arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature. Mere permissive use of land cannot ripen into an easement.

*Carpenter-Union Hills Cemetery Ass'n v. Camp Zoe, Inc.*, 547 S.W.2d 196, 200 (Mo. App. 1977). While a party claiming a right of use is typically allowed a presumption that the use is adverse when there has been a long and continuous use of the disputed property, this presumption does not apply where there is a family relationship between the owners of the respective tracts. *Soderholm v. Nauman*, 409 S.W.3d 382, 391 (Mo. App. 2013) (internal citations and quotations omitted); *Brick House Café & Pub, L.L.C. v. Callahan*, 151 S.W.3d 838, 844 (Mo. App. 2004).

> The general rule is that permissive occupation of a family estate by one or more, but not all, members of the family is so usual and common that acts of occupation thereof to show hostile adverse possession against one another, must be demonstrated by a clear, positive and continued disclaimer and disavowal of title and an unadulterated assertion of adverse right brought home to the true owners for such time as to bar them, by statutory limitations, from asserting their rights. Where there exists a family relationship among the involved parties, that relationship will prevent or rebut a presumption of adverse holding that may arise under similar circumstances involving nonrelated parties. Stronger evidence of adverse possession is required in the presence of a family relationship than where no such relationship exists.

*Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. 1980).

By finding that Donald's Kerr's permissive use of the lane precluded a prescriptive easement by Daniels-Kerr, the court recognized the interconnectedness of the Kerr family and

9

imputed to Daniels-Kerr the grant of permission given to her father-in-law and/or deemed use of the lane permissive from its inception. Clearly, Daniels-Kerr is not related to the Crosbys and, therefore, there is no family relationship between land owner and the prescriptive easement claimant. However, the rationale behind requiring stronger evidence of adversity where there is a family relationship between the owners of respective tracts is equally applicable here where the family patriarch, who resided on and co-owned the property next to the purported easement, was given express permission to use the purported easement during the ten-year period that his son and daughter-in-law claim adverse use of the land through more sporadic use. Daniels-Kerr presented no evidence at trial of a distinct and positive assertion of a right hostile to Crosby such that she transformed her subordinate, and most likely friendly and permissive, use into one of an opposite nature. Daniels-Kerr's mere assertion that she and Jerry Kerr were never expressly given permission to use the lane falls short of clear and convincing evidence that she adversely utilized the lane on the disputed property such that she acquired a prescriptive easement. Point two is denied.

We conclude, therefore, that the circuit court's finding that, Daniels-Kerr failed to establish title to the disputed land by adverse possession was not against the weight of the evidence. Further, the circuit court's finding that, Daniels-Kerr failed to prove a prescriptive easement to the lane located on the disputed land was also not against the weight of the evidence. The circuit court's judgment is affirmed.

_____

Anthony Rex Gabbert, Judge


All concur.

10