**Michael and Linda KINDER, Respondents,**

v.

**Ralph and Tammy L. CALCOTE, Appellants.**

**WD 80655**

Missouri Court of Appeals,
Western District.

OPINION FILED: January 9, 2018

Thomas Schneider, Columbia, MO, Counsel for Appellants.

Garrett Taylor, Columbia, MO, Counsel for Respondents.

Before Division One: Cynthia L. Martin, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

James Edward Welsh, Judge

Ralph and Tammy Calcote appeal the circuit court's judgment quieting title to a 1.22 acre tract of land based upon a finding of adverse possession in favor of Michael and Linda Kinder. We affirm.

## Background

In April 2015, the Kinders filed a petition seeking to quiet title to a tract of land (the "Disputed Tract") situated between their property and property owned by Ralph and Tammy Calcote. The Kinders claimed to have acquired ownership of the Disputed Tract via adverse possession.[1] The Calcotes filed a counterclaim seeking a declaration that they own the Disputed Tract and an injunction preventing the Kinders from entering upon it.

At a bench trial in December 2016, both Michael and Linda Kinder testified, and they presented the testimony of Michael's father (Julius Kinder) and of Jerry Johnson, whose family previously owned the Calcotes' property. Ralph and Tammy Calcote also testified. The evidence presented showed that the "Kinder Property" consists of a residence and 43 acres of mostly wooded property. Julius Kinder purchased the property in 1965 and built a home on it a few years later. He owned the property until 1985, when he transferred it to his son, Michael.[2] In a series of conveyances, between 1985 and 1988, Michael acquired title to the residence and the entire 43

acres. In December 1995, Ralph and Tammy Calcote acquired the "Calcote Property," which consists of 16.22 acres of undeveloped real estate that is contiguous to the entire eastern edge of the Kinder Property.

The "Disputed Tract" is a long, thin triangular strip of land, 1.22 acres in size, which sits between the Kinders' 43 acres to the west and the Calcotes' 16.22 acres to the east. The property is primarily wooded, and there are remnants of an old fence running north and south along its eastern edge. The Kinders' driveway and a portion of their yard are located on the southern part of the Disputed Tract. A dirt road bed just west of the old fence runs from the Kinders' driveway up to the northern reaches of the Kinder Property where it then turns to the west. According to surveys commissioned by both the Kinders and the Calcotes, the Disputed Tract is included in the Calcotes' 16.22-acre tract.

The Calcotes also own 50 acres of property, which they acquired in 1993, that borders the Disputed Tract on the north. In 1998, the Calcotes built a home there, which sits approximately 80 to 100 yards from the Disputed Tract's northern border. The Calcotes testified that they have since maintained the northern part of the Disputed Tract by planting trees, mowing, and putting in a garden and have used it to store firewood, mulch, compost bins, and a utility shed.

At trial, both sides claimed never to have seen the other using the Disputed Tract between 1993 and 2003. In 2003, Ralph Calcote observed Linda Kinder attempting to place a fence in the northern

---

1. The Kinders' petition included claims for Quiet Title/Adverse Possession (Count I), for Ejectment (Count II), for Preliminary and/or Permanent Injunction (Count III), and for Statutory Trespass (Count IV).

2. We refer to the parties by their first names for the sake of clarity and brevity. No familiarity is intended.

part of the Disputed Tract to contain her horses. Ralph approached Linda and told her that the property she was attempting to fence was his property. Until then, no one had asked the Kinders to stay off the Disputed Tract or suggested that it was not their property. The Calcotes contacted the Sheriff's department to keep the Kinders off the Disputed Tract.

In 2007, the Calcotes obtained a survey showing that the Disputed Tract is included in the legal description of their 16.22 acres. The Kinders obtained a survey in 2010 which showed the same. In 2014, the Calcotes hired a contractor to move a cabin built by Julius Kinder out of the northern part of the Disputed Tract. Michael Kinder testified that the cabin was badly damaged in the process of moving it.

On March 7, 2017, the circuit court entered judgment in favor of the Kinders. The court found that the Kinders had "established each and every element" of their adverse possession claim (Count I) and awarded them title to the Disputed Tract, "except to the extent that the disputed area includes [the Calcotes'] garden and shed at the north end." The court also found in favor of the Kinders on their action for ejectment (Count II) and ordered the Calcotes

> to immediately remove any obstacles located or placed in the Disputed Strip by [them], except to the extent that the Disputed Strip includes [their] garden and shed. The Court further orders that [the Calcotes] shall have appropriate and reasonable ingress and egress to their garden and shed if ingress and egress paths or routes are located in the Disputed Strip.

The court found that Michael's testimony regarding damages to the cabin was not

credible and denied the Kinders' other two counts. The court denied the Calcotes' counterclaims.

### Discussion

The Calcotes raise two points on appeal, in which they argue that the trial court erred in awarding the Kinders fee simple title to the Disputed Tract north of the Kinders' yard based on a finding of adverse possession.[3] They contend that "there was no substantial and competent evidence to support the court's findings and conclusions" as to two elements of adverse possession: "actual possession" (Point I), and "open and notorious" possession (Point II).

### *Standard of Review*

■ As in any court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We presume that the judgment is correct, and the appellant has the burden to show otherwise. *Ferguson v. Hoffman*, 462 S.W.3d 776, 780 (Mo. App. 2015). In assessing the sufficiency of the evidence, we accept all evidence and inferences favorable to the judgment as true and disregard all evidence to the contrary. *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009). We defer to the trial court's assessment of the facts, as it is in a better position to judge not only the credibility of witnesses, "but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012). A claim that the trial court erroneously declared or applied

---

3. According to the Calcotes, possession of the Kinders' "yard" is not an issue on appeal. They do not contest the court's decision to award the southern part of the Disputed Tract that the Kinders use as their yard and driveway.

the law are questions of law which we review *de novo. Id.* at 43. In reviewing mixed questions of law and fact, we defer to the trial court's factual findings, if they are supported by competent, substantial evidence, but we review the application of the law to those facts *de novo. Id.* at 44. A claim of adverse possession "presents mixed questions of law and facts." *DeVore v. Vaughn*, 504 S.W.3d 176, 186 (Mo. App. 2016).

### Adverse Possession

To acquire title by adverse possession, the claimant must prove by a preponderance of the evidence that the possession was: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years before commencement of the action. *Watson*, 298 S.W.3d at 526; § 516.010, RSMo 2016. The requisite ten-year period need not occur immediately prior to the suit; the elements can occur during *any* consecutive ten-year period. *Id.* Moreover, the claimant may tack his period of adverse possession onto that of his predecessor in title to meet the ten-year requirement. *Id.*

Viewed in the light most favorable to the judgment, *see id.*, the Kinders presented the following evidence to support their claim of adverse possession. The Kinder Property has been continuously owned by Julius or Michael Kinder from 1965 to the present. When Julius purchased the property in 1965, an old fence existed along its eastern edge, and a dirt road bed ran alongside the fence up to the northern reaches of his property. Julius testified that he always believed that the fence was the eastern boundary line of his property. He built a home on the property a few years after he purchased it and installed a gravel driveway at that time. Both the driveway and the road bed lie within the Disputed Tract.

After purchasing the property, Julius widened the existing road bed and leveled its terrain and thereafter consistently maintained it. He regularly used the road bed to access the northern part of his property where he built a cabin. Julius operated a saw mill on the Kinder Property while he lived there. He and Michael used the road bed to access the northern part of the property to cut logs, pull them out with a tractor, and then saw them into lumber. Julius told the judge that from 1965 to 1985, he used the existing road bed to access the northern part of the Kinder Property more than twenty times a year to maintain his property, to hunt on his property, for ingress and egress for logging purposes on his property, as a means of access to his cabin, and as a means to walk the boundaries of the Kinder Property.

Michael Kinder has resided on the Kinder Property for over five decades (with two brief exceptions when he was stationed elsewhere by the military). When he and Linda obtained title to the Kinder Property in 1985, they began maintaining the gravel driveway and the yard surrounding the residence up to the old fence line. They continued to do so up to the date of trial. The Kinders maintained and trimmed trees along the road bed in the Disputed Tract until 2003. They and their children used the road bed to access the northern part of the Kinder Property at least twice a week for a period of at least ten years. The Kinders used the road bed for hayrides, and the children rode ATVs, motorcycles, and bicycles along the road bed up to the cabin. Linda allowed her horses to graze within the Disputed Tract, and the Kinders stored a trailer, building materials, and mulch piles on the Disputed Tract. Both Michael and Linda believed that the

old fence line was the eastern border of their property.

Jerry Johnson testified that his family previously owned the Calcote Property, having purchased it in 1948. He still owns neighboring property where he lived until he moved to town just a few years earlier. Johnson stated that he was familiar with both the Calcote Property and the Kinder Property. He, too, had always believed that the boundary between the properties was the old fence line to the east of the Kinder Property.

### "Actual Possession"

The Calcotes first contend that the circuit court erred in finding that there was sufficient evidence of "actual possession." They claim that the Kinders failed to offer evidence of any acts that would constitute actual possession "except occasional use of a 10-foot strip over a part of the disputed tract north of the yard for ingress and egress."

"Actual possession is the present ability to control the land and the intent to exclude others from such control." *Stratford v. Long*, 430 S.W.3d 921, 925 (Mo. App. 2014). "A mere mental enclosure" does not constitute actual possession; rather, "there must be continual acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land." *Id.* The performance of all or any combination of such acts of occupancy "serves as evidence of actual possession but is not conclusive." *Harris v. Lynch*, 940 S.W.2d 42, 45-46 (Mo. App. 1997). Given that every piece of property is unique, each adverse possession case must be decided in light of its own unique circumstances. *DeVore*, 504 S.W.3d at 186.

Whether an act constitutes actual possession "depend[s] on the nature and location of the property, the uses to which it can be applied, and all the facts and circumstances of a particular case." *Watson*, 298 S.W.3d at 526-27. Here, the evidence showed that the Disputed Tract is primarily wooded, wild, and undeveloped. Less affirmative acts of ownership are required to establish actual possession for wild, undeveloped land, in that "the nature, location, and possible uses for the property may restrict the type of affirmative acts of ownership that may be appropriate for the land." *Stratford*, 430 S.W.3d at 925.

The circuit court likened the Kinders' evidence to various cases where courts found actual possession under similar circumstances. *See, e.g., Miller v. Warner*, 433 S.W.2d 259, 261-64 (Mo. 1968) (plaintiffs, who claimed title to a strip of land up to a fence, had cleared the land of brush and trees, raised crops on it, pastured cattle on it, and cultivated it up to the fence); *Whiteside v. Rottger*, 913 S.W.2d 114, 120 (Mo. App. 1995) (claimants built a fence and a well on disputed property, hunted and allowed others to hunt, cleared timber, and "exercised some control over who had access to the parcel"); *Stratford*, 430 S.W.3d at 925-26 (claimants ran a geothermal coil in the disputed area; used the area to keep bees; built a fence on the open, pasture part of the area; and maintained the land by cutting brush and clearing the pasture on it). We find that the Kinders' actions also are comparable to those in *Brasher v. Craig*, 483 S.W.3d 446, 451 (Mo. App. 2016). There, this Court found actual possession where the claimants, who claimed to possess the disputed property up to the fence line, had trained dogs on the disputed property, mowed up to the edge of the fence, graveled and maintained a road running along the fence, and maintained the fence and the area next to it.

While actual possession "may be shown by an almost endless combination of circumstances," "each case must be ruled on its own facts." *Miller*, 433 S.W.2d at 263. Here, the trial court found that the Kinders established actual possession based on the following facts:

[F]rom 1965 to 1985, Julius Kinder mowed and maintained the Disputed Strip; improved the Disputed Strip; used the Disputed Strip for access to the northern part of the Kinder Property; installed a driveway on the Disputed Strip; allowed others to use the road bed that existed in the Disputed Strip to access the Kinder Property; used the Disputed Strip as a means of ingress and egress to the northern part of the Kinder Property for logging purposes, hunting purposes, and other purposes; and used the road bed that exists in the Disputed Strip for access to build the [cabin] on the Northern part of the Kinder Property.

[B]eginning in 1985, the Plaintiffs continued these acts previously performed by Julius Kinder. [T]he Plaintiffs, and their children, used the Disputed Strip in the following manner: mowing and maintaining the yard located in the Disputed Strip; maintaining the driveway located in the Disputed Strip; using the road bed that existed in the Disputed Strip at least twice a week for a period of at least ten years to access the northern part of the Kinder Property; driving all-terrain vehicles, motorcycles, and bicycles on the road bed that exists in the Disputed Strip; allowing horses to graze in the Disputed Strip; and storing materials in the Disputed Strip.

Significantly, the court noted that the Calcotes presented no contradictory testimony "to refute the testimony of Julius Kinder of the acts taken by him in the Disputed Strip from 1965 through 1985," and "no contradicting testimony regarding the acts taken by the [Kinders] in the disputed property for the period of 1985 through 1993, when the [Calcotes] acquired title to the Calcote Property." [4] The trial court concluded that, despite conflicting testimony about the parties' use of the Disputed Tract after 1993, "the acts of Julius Kinder and [Michael and Linda Kinder] *from 1965 through 1993* are sufficient for [the Kinders] to meet their burden." (Emphasis added.) [5]

The trial court's determination that the Kinders presented sufficient evidence to establish actual possession before the Calcotes ever acquired the neighboring property is supported by the record. As noted, the required ten-year period of possession need not occur immediately prior to the suit, and the claimant may tack his period of possession onto that of his predecessor. *Watson*, 298 S.W.3d at 526. The Kinders' evidence showed that, since 1965, they and Julius had engaged in activities that demonstrated a "present ability to control the land and the intent to exclude others from such control." *Stratford*, 430 S.W.3d at 925. The trial court was free to believe all, part, or none of the testimony from the Kinders' witnesses. *Watson*, 298 S.W.3d at 525.

In *Whiteside*, 913 S.W.2d at 120, the court found actual possession where the claimants' activities "were the only activities that could be done on the property," as "[t]he land was not fit for cultivation or

4. The judgment refers to 1993 when the Calcotes acquired their 50 acres north of the Disputed Tract; they acquired their 16.22-acre tract (which included the Disputed Tract) in 1995.

5. The Calcotes made no claim that they regained title by adverse possession after 1995 or 2003.

building," and "no one would have allowed the property to be used or disturbed in any other fashion." The same is true here. Given the wild and undeveloped quality of most of the Disputed Tract, and the limited uses for which it was suited, the Kinders' activities were sufficient to establish actual possession. The Kinders also demonstrated their intent to exclude others from the property. Julius often walked the Disputed Tract to make sure no one was on his property, and Michael and Linda regularly checked the cabin to make sure no one was using it.

In light of relevant precedent, the circumstances of this case, and our standard of review, the circuit court did not err in finding sufficient evidence of actual possession. Point denied.

### "Open and Notorious"

 The Calcotes next contend that the trial court erred in finding adverse possession because "there was no substantial and competent evidence" of "open and notorious" possession by the Kinders and their predecessor in title, in that "their actual use essentially consisted of only occasional use of the 10-foot path on that part of the disputed tract."

 The "open and notorious" requirement "is satisfied by visible acts of ownership exercised over the premises, such as maintaining and improving the property." *DeVore*, 504 S.W.3d at 185. The requirement exists "to ensure that the legal owner had cause to know of the adverse claim of ownership by another." *Id.* "The condition of open and notorious conduct does not require proof that the true owner have actual knowledge of the claim, only that the occupancy be conspicuous, widely recognized, and commonly known." *Id.* at 186. Knowledge or notice means "knowledge of all that would be learned by reasonable inquiry." *Id.*

The Calcotes claimed at trial that they never saw any of the Kinders on the north half of the Disputed Tract until the confrontation in 2003, at which point they called the Sheriff and the Kinders thereafter stayed off the Tract. Thus, they argue, until 2003, the Kinders' actions did not amount to the conspicuous "visible acts of ownership" necessary for adverse possession.

We disagree. This case is analogous to *DeVore*, where the appellant challenged a finding of adverse possession as to a Wooded Tract that was adjacent to the claimants' home. 504 S.W.3d at 185-87. Based on the claimants' evidence that they had mowed, cut wood, burned wood, and trimmed trees along the disputed tract, we affirmed the trial court's finding that the open and notorious element was met. *Id.* at 186. We found that the Wooded Tract "was used solely by the DeVores" and that they used it "as one would expect for an undeveloped piece of land." *Id.* at 187. We noted that:

> They cut a network of trails through the property, trimmed trees, cleaned up debris, made the property safe by fencing off an open well, hunted, installed hunting apparatuses, and excluded others from the property. Neighbors testified that they never saw anyone else on the property and that the DeVores treated it as their own.

*Id.* Moreover, we found that the claimants' actions, such as burning, using a chainsaw to maintain the property, and mowing, even if not visible from the road, "would have put the Appellants on notice" and "could have been discovered ... through reasonable inquiry." *Id.*

Here, too, the Kinders used the Disputed Tract "as one would expect for an undeveloped piece of land," and their activities "could have been discovered ... through

reasonable inquiry." When Julius moved in, he widened the road bed and, from 1965 to 1985, regularly drove his tractor up north, where he cut timber for his sawmill. He built a cabin at the north end of the Disputed Tract, and the Kinders thereafter consistently used the road bed to ride tractors, motorcycles, and ATVs up to the cabin. Reasonably, the noise from the Kinders' vehicles traversing the road bed from 1965 onwards would have put their neighbors on notice that they were using the property and claiming it as their own. Moreover, their prior neighbor testified that he had always believed that the eastern boundary of the Kinder Property was the fence line.

In any event, as the trial court noted, the Calcotes presented no evidence to rebut the Kinders' evidence of open and notorious possession of the Tract between 1965 and 1993. The trial court was free to believe the testimony of the Kinders and their predecessor, Julius, about their use and possession of the land during that time period. *See Watson*, 298 S.W.3d at 525. The trial court reasonably could have concluded that the Kinders actions on the Disputed Tract would have provided notice to Johnson's family, and subsequently to the Calcotes, of the Kinders' claim to the Disputed Tract had there been a reasonable inquiry.

In sum, the Kinders' actions, along with the testimony of Johnson, constituted sufficient evidence from which the trial court could find that the Kinders' possession and use of the Disputed Tract was open and notorious. Point denied.

Based on the foregoing, we affirm the circuit court's judgment.

All concur.