In the
 Missouri Court of Appeals
 Western District
GARY COLEMAN, )
 )
 Appellant, ) WD83925
 )
v. ) OPINION FILED: May 25, 2021
 )
HEATH HARTMAN, ET AL., )
 )
 Respondents. )

 Appeal from the Circuit Court of Buchanan County, Missouri
 The Honorable Daniel F. Kellogg, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Lisa White Hardwick,
 Judge and W. Douglas Thomson, Judge

 Gary Coleman ("Coleman") appeals from the trial court's judgment awarding title

to 0.35 acres of Coleman's property to Heath Hartman ("Mr. Hartman") and Kellie

Hartman ("Mrs. Hartman") (collectively "the Hartmans"). Coleman asserts that the trial

court committed error because the evidence did not support the Hartmans' claim of

boundary by acquiescence or the Hartmans' claim of adverse possession. Finding no

error, we affirm.
 Factual and Procedural History1

 Coleman bought approximately 122 acres of farmland in Buchanan County,

Missouri from Gerald Lindsey ("Lindsey") and his wife in the summer of 2015. Lindsey

had acquired this land in May 1994, and while he owned the land, Lindsey farmed

tobacco and other row crops. Prior to purchasing the land from Lindsey, Coleman

inspected the property, drove along the perimeter of the property, and checked the fences

and pond. Coleman noted fencing that would need to be repaired or replaced in order to

run cattle on the land. Based on his inspection, Coleman believed that the land he was

purchasing was contained within the existing perimeter fencing. Nonetheless, Coleman

required Lindsey to obtain a stake survey prior to closing.

 Coleman received the stake survey at closing but did not reinspect the property to

observe the boundary stakes. Coleman proceeded with closing, and the sale was

finalized.

 A few months later, Coleman walked the property and realized that the survey

stakes were not on the existing north-south fence line he had believed to be the eastern

boundary line of his property. Instead, the stakes were located approximately fifteen feet

to the east of the existing north-south fence line.

 The adjacent property to the east of Coleman's property was owned by the

Hartmans. The Hartmans purchased their property, totaling approximately fifty-five

acres, in February 2005 from John Coil ("Coil"). Before purchasing the Coil property,

 1
 "In the appeal of a bench-tried case, [we] view[] the facts in the light most favorable to the trial court's
judgment." Tenampa, Inc. v. Bernard, 616 S.W.3d 327, 330 n.4 (Mo. App. W.D. 2020) (quoting Maly Com. Realty,
Inc. v. Maher, 582 S.W.3d 905, 907 n.1 (Mo. App. W.D. 2019)).

 2
Mr. Hartman walked the property and was told by his real estate agent that the western

boundary of the property was the north-south fence line between Coil's property and what

was then Lindsey's property.

 The Hartmans moved into their home in April 2005, and rented a portion of their

land to Gene McMillien ("McMillen"),2 who ran cattle on the land. McMillen ran a "hot

wire" along the perimeter of the property to contain the cattle, including along the north-

south fence line on the property's presumptive western boundary. In 2006, Mr. Hartman

decided to sharecrop the property with Jeffrey Dexter ("Dexter"), and McMillen removed

his cattle. To make the land suitable for row crops, Mr. Hartman created a buffer strip by

mowing and clearing brush, including along the north-south fence line that separated his

property from the Lindsey's property to the west. Hartman continued this maintenance of

the area along the fence line for more than ten years.

 At some point between the summer of 2015 and 2018, Coleman informed Mr.

Hartman of his plans to run cattle on his property, including the land east of the north-

south fence line up to the surveyed property line. Mr. Hartman told Coleman not to erect

a fence on the surveyed property line, which had been denoted by flags, and not to cut

down any trees along the existing north-south fence line. Coleman and Hartman had

several other conversations about the contested boundary line, and each time Hartman

told Coleman that the survey was not controlling because the existing north-south fence

line had served as the boundary between the properties for more than ten years. Hartman

 2
 Mr. Hartman testified that McMillen's name was "Mr. Gene McMillen--or I think his name was Julius,
actually, McMillen." Because the parties use "Gene'" as McMillen's first name, we have elected to do so as well.

 3
told Coleman that if a new fence was erected on the surveyed line, the fence "wouldn't

stay," a comment Coleman understood to mean that Hartman would tear down new

fencing.

 On February 1, 2019, Coleman filed a petition ("Petition") against Mr. Hartman in

the Circuit Court of Buchanan County. The Petition sought: (1) a declaration that the

boundary survey line determined in 2015 was the legal boundary between Coleman's

property and the Hartman's property, and that Coleman is the legal owner of the .35 acres

of land located between the north-south fence line and the eastern boundary of his

property determined by the survey (the "disputed tract"); (2) a preliminary injunction

restraining Mr. Hartman from entering onto the disputed tract and attempting to destroy,

alter, or otherwise damage any fence installed by Coleman, and restraining Mr. Hartman

from disturbing Coleman's livestock located on the disputed tract during the pendency of

the action; and (3) an award of attorney's fees. Mr. Hartman filed an answer and

counterclaim ("Answer and Counterclaim") which claimed that the existing north-south

fence line constitutes the legal boundary between his property and Coleman's property as

a result of adverse possession and as a result of boundary by acquiescence. On

August 14, 2019, Mr. Hartman filed a motion to join Mrs. Hartman as a necessary party.

The motion was granted.

 During a bench trial on September 10, 2019, the trial court heard evidence before

accompanying the parties to inspect the disputed tract. The trial court then issued a

judgment on October 25, 2019. The judgment concluded that the Hartmans presented

sufficient evidence "to support that [they] obtained title to the land east of the fence line

 4
by adverse possession" so that the existing north-south fence line should serve as the

boundary between Coleman's property and the Hartmans' property. The judgment further

concluded that "[e]ven if [the] Hartman[s] did not acquire title to the disputed tract by

adverse possession, there is evidence Lindsey and Hartman made an oral agreement that

the fence line was the boundary line" so that the boundary agreed upon should be

considered the true one. The judgment concluded that no award of attorney's fees was

appropriate.

 The Hartmans filed a motion to amend the judgment on November 13, 2019, that

pointed out that the judgment erroneously indicated that the north-south fence line at

issue was located on the east side of the Hartmans' property instead of the west side of the

Hartmans' property. Then, on November 21, 2019, the Hartmans filed a motion to vacate

the judgment that because the judgment was not sufficiently definite to quiet title as it

failed to describe the disputed tract by metes and bounds. The motion to vacate

essentially asked the trial court to reopen the case to take additional evidence in the form

of a legal description for the disputed tract.

 On November 22, 2019, the trial court set aside the October 25, 2019 judgment.3

On December 4, 2019, the trial court conducted a hearing, and in a bench note, expressed

the intent to enter a judgment "sustaining [the Hartmans'] claim for adverse possession,"

and ordered the Hartmans "to conduct a survey at their own expense" to determine the

legal description of the disputed tract. On December 19, 2019, the trial court entered a

 3
 Before this order was entered, and despite the Hartmans' pending motion to amend, Coleman filed a notice
of appeal from the October 25, 2019 judgment. That appeal was later dismissed by Coleman on April 20, 2020.

 5
corresponding interlocutory judgment ("Interlocutory Judgment") that included findings

of fact and conclusions of law that were identical in every material respect to those in the

October 25, 2019 judgment, with the exception that the Interlocutory Judgment noted that

a hearing would be later conducted to permit the Hartmans to provide the court with

evidence of a legal description for the disputed tract.

 At a hearing on June 24, 2020, the trial court received in evidence a survey

providing a legal description for the disputed tract. The trial court then issued a judgment

("Final Judgment") on June 29, 2020, setting forth the legal description of the disputed

tract4 "previously found by the Court to belong to [the Hartmans]."

 Coleman appeals.5

 Standard of Review

 Appeals from a bench-tried case are reviewed pursuant to the standard set forth in

Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Daniels-Kerr v. Crosby, 484

S.W.3d 798, 801 (Mo. App. W.D 2016). "We will affirm the [trial] court's judgment

unless it is unsupported by substantial evidence, it is against the weight of the evidence,

or it erroneously declares or applies the law." Id. We view the evidence and the

reasonable inferences drawn therefrom in the light most favorable to the judgment. Id.
 4
 We have not set forth the lengthy metes and bounds legal description for the disputed tract in this Opinion,
and instead incorporate by reference the legal description for the disputed tract set forth in the Final Judgment
entered on June 29, 2020.
 5
 Coleman's notice of appeal identifies the June 29, 2020 Final Judgment as the trial court judgment from
which he appeals. As a matter of law, the Final Judgment incorporates the December 19, 2019 Interlocutory
Judgment, for purposes of preserving the right to seek appellate review. State ex rel. Koster v. ConocoPhillips Co.,
493 S.W.3d 397, 401 (Mo. banc 2016) (holding that a final judgment necessarily incorporates all prior orders or
interlocutory judgments whether or not addressed in the final judgment). The jurisdictional statement in Coleman's
brief inexplicably refers to the vacated October 25, 2019 judgment as the judgment from which he appeals. We
have, ex gratia, afforded Coleman the benefit of the doubt and have treated his appeal as taking issue with the
findings and conclusions in the Interlocutory Judgment, as they are virtually identical to those set forth in the
October 25, 2019 judgment.

 6
Further, we defer to the trial court's determination as to the weight to be given to the

evidence and to the trial court's determination of credibility, as the trial court "is free to

believe some, all, or none of the testimony of any witness." A2 Creative Grp., LLC v.

Anderson, 596 S.W.3d 214, 218 (Mo. App. W.D. 2020) (quoting Brasher v. Craig, 483

S.W.3d 446, 450 (Mo. App. W.D. 2016)).

 Analysis

 Coleman presents two points on appeal. In the first, Coleman argues that the trial

court committed error in accepting testimony presented at trial by the Hartmans as

"immediately determinative" of ownership of the disputed tract under the legal theory of

boundary by acquiescence, and as "conclusive evidence" of the Hartmans' adverse

possession claim. Coleman's second point on appeal claims that the trial court erred in

finding for the Hartmans on their claim of adverse possession because the Hartmans

"failed to establish by a preponderance of the evidence all of the required five elements of

adverse possession."6 We address the points collectively.

 The Interlocutory Judgment made factual findings based on the evidence presented

by the parties, and concluded as a matter of law that the Hartmans presented sufficient

evidence to establish that they had obtained title to the disputed tract via adverse

possession. Alternatively, the Interlocutory Judgment found that Lindsey and Hartman

 6
 As noted in our discussion of the standard of review applicable to Coleman's appeal, Murphy v. Carron,
536 S.W.2d 30, 32 (Mo. banc 1976), controls our review so that we may only reverse if the Final Judgment is
unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the
law. See Daniels-Kerr, 484 S.W.3d at 801. In contravention of Rule 84.04(d)(1)(B), neither of Coleman's points
relied on specify on which ground he relies for reversal, thereby preserving nothing for our review. See Warren v.
Dunlap, 532 S.W.3d 725,728 n.3 (Mo. App. S.D. 2017). However, it is apparent from the argument portion of
Coleman's brief that his first point relied on asserts that the trial court erroneously applied the law concerning
boundary by acquiescence and that his second point relied on asserts that there was not substantial evidence to
support the Hartmans' claim of adverse possession.

 7
had treated the north-south fence line as the boundary line for more than ten years,

triggering the doctrine of boundary by acquiescence.

 "The theories of boundary by acquiescence and adverse possession are separate

and distinct legal doctrines." Brasher, 483 S.W.3d at 450-51. Adverse possession

claims, if successful, divest the record owner of title, and award ownership of and title in,

disputed property to the adverse possessor. Fischer v. First Am. Title Ins. Co., 388

S.W.3d 181, 189 (Mo. App. W.D. 2012). Boundary by acquiescence, on the other hand,

"exists if there is an uncertain boundary and the landowners fix the boundary by 'an

agreement that is presumed as a result of long acquiescence.'" Id. (quoting Weiss v.

Alford, 267 S.W.3d 822, 827 (Mo. App. E.D. 2008)). That acquiescence may be proved

by "an express agreement or by acquiescence in a fence as a boundary for a period of

time sufficient to evidence a mutual acceptance of the dividing line as the common

boundary by the adjoining owners." Id. (quoting Shoemaker v. Houchen, 994 S.W.2d 40,

45 (Mo. App. W.D. 1999)). Though boundary by acquiescence can establish the

boundary between two parcels, it does not operate to alter the possessor of legal title of

the land on either side of the boundary line. Id. However, "[o]nce there is an express

agreement or acquiescence on the part of the landowners [about a boundary line],

possession [thereafter] becomes adverse for the purpose of running the statute of

limitations period for adverse possession." Id.

 Here, "the boundary to which there was claimed to have been an acquiescence or

agreement merely defined the outer edge of the land [the Hartmans] claimed to have

adversely possessed." Brasher, 483 S.W.3d at 451 (quoting Fischer, 388 S.W.3d at 190).

 8
But the Hartmans' adverse possession claim does not depend for its proof on the presence

of a boundary by acquiescence. If the trial court otherwise permissibly concluded that

the Hartmans established adverse possession of the disputed tract, then the Hartmans'

boundary by acquiescence claim is rendered moot. We therefore turn our attention to

Coleman's second point on appeal, which contests the sufficiency of the evidence to

establish all of the elements of a claim of adverse possession.

 To prevail on their adverse possession claim, it was the Hartmans' burden to prove

by a preponderance of the evidence that their possession of the disputed tract was: "(1)

hostile, that is under a claim of right, (2) actual, (3) open and notorious, (4) exclusive,

and (5) continuous for [ten] years prior to the commencement of action." A2 Creative

Grp., LLC, 596 S.W.3d at 219, 221 (quoting Watson v. Mense, 298 S.W.3d 521, 526

(Mo. banc 2009)). Each claim of adverse possession presents unique circumstances

requiring the resolution of mixed questions of law and fact. Id. at 219. "Much depends

on the location, the character and the use to which the land in question may reasonably be

put." Id. (quoting Kitterman v. Simrall, 924 S.W.2d 872, 876 (Mo. App. W.D. 1996)).

The Hartmans' "failure to prove even one of the elements of adverse possession will

defeat [their] claim." Empire Dist. Elec. Co. v. Coverdell, 588 S.W.3d 225, 234 (Mo.

App. S.D. 2019) (quoting Conduff v. Stone, 968 S.W.2d 200, 203 (Mo. App. S.D. 1998)).

 In the argument portion of his brief, Coleman alleges that the Hartmans failed to

prove three of the five elements of adverse possession by a preponderance of the

evidence; specifically, that their possession of the disputed tract was actual, open and

notorious, and exclusive. Coleman does not contest that substantial evidence established

 9
that the Hartmans' possession of the disputed tract was hostile and continuous for the

statutory period of ten years prior to commencement of the action.

 Coleman's second point relied on does not specify whether the contested elements

of the Hartmans' adverse possession claim were not supported by substantial evidence, or

were against the weight of evidence. However, in the argument portion of the brief, it is

apparent that Coleman effectively contends that no substantial evidence supported

finding that actual, open and notorious, or exclusive possession of the disputed tract was

established.7 "Substantial evidence is evidence that, if believed, has some probative force

on each fact that is necessary to sustain the [trial] court's judgment." ADB Cos. v. Socket

Telecom, LLC, 618 S.W.3d 237, 244 (Mo. App. W.D. 2021) (quoting Ivie v. Smith, 439

S.W.3d 189, 199 (Mo. banc 2014)).

Actual Possession

 Coleman asserts that the Hartmans failed to establish actual possession of the

disputed tract because they failed "to demonstrate [their] intent to exclude others from

control of the disputed tract." [Appellant's Brief, p. 26] "Actual possession is the present

ability to control the land and the intent to exclude others from such control." Kinder v.

Calcote, 537 S.W.3d 379, 385 (Mo. App. W.D. 2018) (quoting Stratford v. Long, 430

S.W.3d 921, 925 (Mo. App. S.D. 2014)). Actual possession refers to something more

than a "mere mental enclosure," so that "there must be continual acts of occupying,

clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes

on the land." Id. (quoting Stratford, 430 S.W.3d at 925). All or any combination of these

 7
 See supra note 6.

 10
acts will serve as evidence, but will not be conclusive, of actual possession of the

disputed tract because, as noted supra, each parcel of land is unique and each case must

be decided in light of its particular facts and circumstances. Id. Actual possession "is

less strict for wild, undeveloped land." Watson v. Mense, 298 S.W.3d 521, 527 (Mo.

banc 2009).

 Coleman's argument focuses on the existing north-south fence line. Coleman

points to evidence that Mr. Hartman did not maintain the fence as it had multiple gaps

and needed repair. Coleman also argues that the Hartmans never posted signage on the

fence forbidding trespassing. Though Coleman acknowledges Mr. Hartman's testimony

that he mowed a portion of the disputed tract two or three times a year to create a border

around his row crops, Coleman asserts that "[t]his mowing is not equal to maintaining a

fence that would keep humans entirely out of his piece of ground, let alone any other

entity or animal." [Appellant's Brief, p. 27]

 Coleman's focus on the fence ignores that the existence or maintenance of a fence

is not necessary to establish actual possession. See Watson, 298 S.W.3d at 527

(concluding that there was evidence of actual possession where the claimants farmed,

pastured, and cultivated land enclosed by a fence and hedgerow, and where the parties

treated fence and hedgerow as the boundary, even after the fence and hedgerow were

removed). Substantial evidence unrelated to the fence established that the Hartmans and

their predecessors in title were in actual possession of the disputed tract.

 Mr. Hartman's testimony established that the Hartmans had both the ability to

control the disputed tract and the intent to exclude others from such control. The

 11
Hartmans purchased their approximate 55-acre tract from Coil in February 2005. When

Mr. Hartman walked the property before the purchase, he was told that he was buying all

of the property within the fence lines that surrounded the property, including the north-

south fence line at issue in this case. Mr. Hartman has treated the north-south fence line

as the western boundary of his property at all times since purchasing the land in February

2005.

 Mr. Hartman testified that he and his wife initially rented a portion of their land to

McMillen, who ran a "hot wire" along the north-south fence line in order to run cattle, a

use that continued until 2006, when Mr. Hartman arranged to sharecrop the land with row

crops. Mr. Hartman created a buffer strip along the perimeter of the property, and around

the row crops by cleaning out the brush on his side of the north-south fence line where

feasible,8 and by cutting down trees and using Tordon to kill the roots and prevent future

growth. Mr. Hartman mowed the buffer strip along the north-south fence line with a

brush hog two to three times a year, and cleaned out the fence line when necessary so

brush and limbs would not damage the farm machinery working in the field. After

Coleman commissioned the survey to determine the property line, Mr. Hartman initially

mowed around the survey stakes in the ground, but then used the brush hog to mow over

the stakes to maintain the land on what he believed was his side of the fence.

 8
 Mr. Hartman testified that the land toward the northern portion of the property line he shares with
Coleman is difficult to reach with equipment because it has bluffs and is rocky.

 12
 Substantial evidence established that the Hartmans had actual possession of the

disputed tract as they had both the ability to control the disputed tract and the intent to

exclude others from such control.

Open and Notorious Possession

 Coleman argues that the Hartmans failed to present evidence of their "visible acts

of ownership" of the disputed tract, and thus failed to establish that their possession of the

disputed tract was open and notorious. Possession of property is open and notorious if

the claimant engaged in "visible acts of ownership exercised over the premises, such as

maintaining and improving the property." Kinder, 537 S.W.3d at 387 (quoting DeVore v.

Vaughn, 504 S.W.3d 176, 185 (Mo. App. W.D. 2016)). The claimant need not prove that

the true owner of the property had actual knowledge of the claimant's claim to the

property. Id. Instead, the claimant's occupancy on the property must be "conspicuous,

widely recognized, and commonly known." Id. (quoting DeVore, 504 S.W.3d at 186). In

other words, the legal owner must have "had cause to know of the adverse claim of

ownership by another." Id. (quoting DeVore, 504 S.W.3d at 185).

 Coleman points to Mr. Hartman's admissions that he had not placed any signs on

the existing fence line to forbid trespassing, and that he had not completed the existing

fence or installed a new fence to prevent access to the disputed tract. Coleman asserts

that Mr. Hartman's minimal maintenance of the existing fence is not sufficient to

establish open and notorious possession of the disputed tract. Coleman also argues that

open and notorious possession is not established by the Hartmans' belief they had

"somehow earned it through attrition." [Appellant's Brief, p. 29]

 13
 Coleman again places too much emphasis on the existing fence. For a claimant's

possession to be open and notorious, "there need not be a fence, building or other

improvements." Trokey v. R.D.P. Dev. Grp., L.L.C., 401 S.W.3d 516, (Mo. App. S.D.

2013) (quoting City of South Greenfield v. Cagle, 591 S.W.2d 156, 160 (Mo. App. S.D.

1979)). It is true that the western boundary of the disputed tract was the north-south

fence line. However, the disputed tract involved property other than the fence. The

evidence established that Mr. Hartman regularly maintained and improved the disputed

tract in that he: (1) cleared brush along the existing fence line; (2) cut down trees and

sprayed stumps with Tordon to prevent future growth in the disputed tract; (3) created,

and then regularly mowed with a brush hog, a buffer strip along the existing fence line

where the terrain allowed; and (4) replaced fencing and water gap fencing in the northern

end of the disputed tract, where the terrain is less suitable for row crops. Dexter,

Hartman's sharecropper, confirmed that he was aware of the maintenance and

improvements that Mr. Hartman had performed on the property. Dexter testified that,

over the last thirteen years, he had witnessed Mr. Hartman maintain the disputed tract,

including cutting down trees and mowing the grass. Finally, Coleman himself testified

that he had witnessed Mr. Hartman mowing and cutting down trees in the disputed tract.

Maintaining and improving the disputed tract constituted visible acts of ownership that

would cause the Coleman's predecessor in interest to know of the Hartmans' adverse

claim of ownership. Kinder, 537 S.W.3d at 387.

 14
 Substantial evidence established that the Hartmans' occupancy of the disputed tract

was sufficiently "conspicuous, widely recognized, and commonly known" so as to

constitute open and notorious possession. See id.

Exclusive Possession

 Coleman finally argues that the Hartmans failed to present evidence that their

possession of the disputed tract was exclusive for the ten-year statutory period. The

exclusive element of adverse possession requires proof that "the claimant possesses the

land for himself, and not for others." Brasher, 483 S.W.3d at 452. To demonstrate that

their possession of the disputed tract was exclusive, the Hartmans had to present evidence

that they "wholly excluded the true owner from possession of the property" so that they

did not jointly possess the disputed tract with Coleman or his predecessor in interest. A2

Creative Grp., LLC, 596 S.W.3d at 219 (quoting Brasher, 483 S.W.3d at 452).

"[S]poradic use, temporary presence, or permissive visits by others, including the record

owner," will not defeat a claim of exclusive possession. Id. (quoting Brasher, 483

S.W.3d at 452).

 Coleman argues that the only evidence the Hartmans presented suggesting

exclusive possession of the disputed tract was that Mr. Hartman occasionally mowed and

tilled a portion of the disputed tract. Coleman argues this is not substantial evidence of

exclusive use.

 Coleman's characterization of the evidence is inaccurate. The evidence

established that for more than ten years before Coleman purchased his land from Lindsey,

Mr. Hartman used and maintained the disputed tract, at first renting the pasture to

 15
McMillen for running cattle, and later creating, maintaining, and routinely using the

disputed tract to sharecrop with Dexter. Since purchasing his property in 2005, Mr.

Hartman has treated the disputed tract as his property, reflected by giving people

permission to use the land to the exclusion of others. In addition, Mr. Hartman

performed periodic maintenance on the existing north-south fence, and when Coleman

tried to erect a fence on the boundary line reflected by the stake survey, Mr. Hartman

objected.

 Substantial evidence established that the Hartmans exclusively possessed the

disputed tract for themselves, and not for others, following their purchase of their

property in February 2005, and thus for more than ten years before Coleman acquired his

property in the summer of 2015.

 The trial court's determination that the Hartmans acquired title to the disputed tract

by adverse possession was supported by substantial evidence. Coleman's second point on

appeal is denied.

 Because the trial court did not err when it awarded title to the disputed tract to the

Hartmans by adverse possession, we need not address whether the trial court correctly

found in the alternative that the north-south fence line was the boundary between the

Hartmans' and Coleman's properties by acquiescence. Coleman's first point on appeal is

therefore denied as moot.

 16
 Conclusion

 The Final Judgment is affirmed.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 17